

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Bernardo Solá Gutiérrez, Maldrid Maldonado y la Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>Recurridos<br><br>v.<br><br>Esteban R. Bengoa Becerra<br><br>Peticionario | Certiorari<br><br>2011 TSPR 119<br><br>182 DPR _____ |

Número del Caso: AC - 2010 - 49


Fecha: 11 de agosto de 2011


Tribunal de Apelaciones:

　　　　　Región Judicial de Humacao Panel X


Jueza Ponente:
　　　　　　　　　Hon. Carmen H. Carlos Cabrera


Abogado de la Parte Peticionaria:

　　　　　　　　　Lcdo. Esteban R. Bengoa


Abogado de la Parte Recurrida:


　　　　　　　　　Lcdo. Luis Ramón Rodríguez Cintrón


Materia: Alimentos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Bernando Solá Gutiérrez,
Maldrid Maldonado y la
Sociedad Legal de Bienes
Gananciales compuesta
por ambos

      Recurridos               AC-2010-049

        v.

Esteban R. Bengoa Becerra

      Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 11 de agosto de 2011.

El Tribunal de Apelaciones confirmó un dictamen del Tribunal de Primera Instancia que concluyó que los tribunales de Puerto Rico tenían jurisdicción para imponer una pensión de alimentos a favor de un menor. Debemos resolver si carecemos de jurisdicción sobre la materia para atender una reclamación de alimentos luego de que un tribunal del estado de Florida impusiera previamente una pensión a favor del mismo menor. Por distintos fundamentos confirmamos el dictamen del Tribunal de Apelaciones.

I

El Sr. Esteban R. Bengoa Becerra y la Sra. Maldrid Moreno Maldonado estuvieron casados y procrearon al Sr. Javier Bengoa Moreno. Este y la Sra. Danette Linares, procrearon al menor J.S.B.L. Tras varios incidentes, el 30 de octubre de 2007 el Tribunal del Condado de Orange, Florida, otorgó la custodia temporera del menor J.S.B.L. a su abuela paterna, la Sra. Moreno Maldonado y su actual esposo, el Sr. Bernardo Solá Gutiérrez. Desde entonces, los esposos Solá-Moreno se mudaron con el menor a Puerto Rico.

El 4 de diciembre de 2007 el Tribunal de Florida le impuso a cada uno de los padres del menor J.S.B.L. una pensión alimentaria de $240, para un total de $480 al mes. En esa orden el Tribunal de Florida expresó lo siguiente: "The court reserves jurisdiction of the entire matter to enter any further orders as may be equitable, appropiate and just to enforce the orders made herein". Apéndice del Recurso, pág. 101. Es decir, el Tribunal de Florida retuvo jurisdicción sobre la controversia de alimentos del menor J.S.B.L.

El 9 de febrero de 2009 el Tribunal de Florida le confirió al matrimonio Solá-Moreno la custodia permanente del menor. En dicha ocasión el Tribunal de Florida indicó que retenía jurisdicción sobre el menor. Poco más de dos meses después, el matrimonio Solá-Moreno, en representación del menor, presentó una demanda de alimentos en contra del señor Bengoa Becerra, abuelo

paterno del menor J.S.B.L., en el Tribunal de Primera Instancia, sala de Humacao. En la demanda se adujo que el señor Bengoa Becerra acordó con la Sra. Moreno Maldonado el pago de $500 dólares mensuales para la manutención de su nieto, aportación que dejó de hacer en un momento determinado. Se alegó además que los padres del menor no estaban en condiciones de aportar a la manutención del menor, por lo que le correspondía al abuelo paterno hacerlo.

El señor Bengoa Becerra presentó una moción de desestimación por falta de jurisdicción. En ella adujo que el menor nació en el estado de Florida y que este también era el domicilio de los padres por lo que los tribunales de Puerto Rico no tenían jurisdicción sobre el asunto. La moción fue declarada no ha lugar.

Luego de varios trámites procesales el Tribunal de Primera Instancia celebró una vista de alimentos. En la vista, el Sr. Bengoa Becerra presentó una solicitud de desestimación por falta de jurisdicción, que fue denegada. Entonces presentó otra solicitud de desestimación en la que alegó que en la vista de alimentos los demandantes no presentaron evidencia para probar que los padres biológicos del menor J.S.B.L. eran incapaces de satisfacer las necesidades de su hijo. El foro primario dictó una orden en la que declaró sin lugar la solicitud de desestimación presentada por el señor Bengoa Becerra.

Así las cosas, el Tribunal de Primera Instancia emitió una Resolución en la que consignó que el menor

J.S.B.L. tiene una necesidad alimentaria que no pueden suplir sus padres biológicos y como no existen otros parientes en grado más próximo obligados a alimentar, los llamados a ello son los abuelos, a saber, el peticionario Bengoa Becerra y la señora Moreno Maldonado. Por ello, resolvió imponer una pensión alimentaria provisional al peticionario equivalente al 50% de responsabilidad por los gastos básicos y suplementarios del menor, lo que se tradujo en una cantidad de $1,140.98 mensuales.

Inconforme, el señor Bengoa Becerra presentó una solicitud de *certiorari* ante el Tribunal de Apelaciones. Días después presentó una moción suplementaria en la que planteó nuevamente la falta de jurisdicción. En específico, señaló que los tribunales de Puerto Rico no tenían jurisdicción para entender en este caso pues el único tribunal con jurisdicción era el de Florida. Cabe destacar que esta fue la primera vez en que salió a relucir que existía una orden de alimentos emitida por el Tribunal de Florida. Es decir, el foro primario no conocía sobre esa orden al momento de imponer la pensión de alimentos. Así las cosas, el foro apelativo intermedio emitió una sentencia en la cual expidió el *certiorari* y confirmó la resolución del Tribunal de Primera Instancia. El Tribunal de Apelaciones señaló que la controversia de falta de jurisdicción sobre la materia debía plantearse primero ante el Tribunal de Primera Instancia. Dispuso también que procedía saltar de grados y reclamarle alimentos al abuelo paterno del menor.

Todavía insatisfecho, el señor Bengoa Becerra apeló ante este Tribunal. Aduce que la controversia es de la jurisdicción exclusiva del tribunal del estado de Florida. De forma paralela, los señores Solá Gutiérrez y Moreno Maldonado presentaron ante el Tribunal de Primera Instancia una moción en la que solicitaron que se encontrara incurso en desacato al señor Bengoa Becerra por no satisfacer la pensión fijada. Ante este cuadro fáctico, el señor Bengoa Becerra presentó una moción en auxilio de nuestra jurisdicción en la que solicitó que paralizáramos los procesos en el foro primario hasta que se dilucidara el recurso presentado en este Tribunal.

El 23 de julio de 2010 acogimos la petición de apelación como un *certiorari* y en auxilio de nuestra jurisdicción, paralizamos el procedimiento en el Tribunal de Primera Instancia. Debidamente sometidos los alegatos de las partes, procedemos a resolver la controversia planteada.

II

Como cuestión de umbral, nos corresponde auscultar el planteamiento jurisdiccional que planteó el señor Bengoa Becerra. Es conocido que "[l]a jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias". Asoc. Punta las Marías v. A.R.Pe., 170 D.P.R. 253, 263 n.3 (2007); Gearheart v. Haskell, 87 D.P.R. 57, 61 (1963). En específico, la jurisdicción sobre la materia "se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto

legal". J. Echevarría Vargas, Procedimiento Civil Puertorriqueño, Colombia, [s. Ed.], 2010, pág. 25. En otras palabras, "es el poder de un tribunal en particular de conocer el tipo de caso que tiene ante su consideración". Black´s Law Dictionary, 5ta ed., West Publishing Co., 1979, pág. 767; Davis v. Davis, 9 Ill. App. 3d 922, 929, 293 N.E. 2d 399, 405 (1973). (Traducción suplida.)

Debido a que la jurisdicción es el poder o autoridad que posee un tribunal para considerar y decidir un caso o controversia, su ausencia

> trae consigo las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste abrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio.

> González v. Mayagüez Resort & Casino, Op. de 10 de septiembre de 2009, 2009 T.S.P.R. 140, págs. 6-7, 2009 J.T.S. 143, 176 D.P.R.__, (2009), citando a Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997).

Tan pronto el tribunal determina que no tiene jurisdicción sobre la materia, viene obligado a desestimar el caso. González v. Mayagüez Resort & Casino, supra. El tribunal que no tiene la autoridad para atender un recurso, solo tiene jurisdicción para así declararlo y proceder a desestimar el caso. Carattini v. Collazo Syst. Analysis, Inc., 158 D.P.R. 345, 355 (2003). Es decir, la

ausencia de jurisdicción es insubsanable. Vázquez v. A.R.P.E., 128 D.P.R. 513, 537 (1991). Véase, además, J. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Publicaciones J.T.S., 2000, T. 1, págs. 286-287.

El Tribunal de Apelaciones determinó que el planteamiento jurisdiccional se debía atender en el foro primario. Todo tribunal tiene la responsabilidad indelegable de auscultar su propia jurisdicción. En este caso el señor Bengoa Becerra presentó una moción suplementaria en la que argumentó extensamente las razones por las cuales los tribunales de Puerto Rico alegadamente no contaban con jurisdicción para atender el asunto de alimentos del menor J.S.B.L. El foro apelativo intermedio correctamente remitió el caso al foro primario, pero debió discutir las razones por las cuales tenía jurisdicción y proveer unas guías que ayudaran al Tribunal de Primera Instancia a resolver el planteamiento jurisdiccional.

III

En el 1996 el Congreso federal aprobó la Ley General de Responsabilidad Personal y Oportunidad de Empleos, denominada en inglés como "Personal Responsibility and Work Opportunity Reconciliation Act of 1996", cuya Sección 321 le exigió a los estados y Puerto Rico adoptar la Uniform Interstate Family Support Act (UIFSA) como requisito para recibir fondos federales para los programas de sustento de menores y asistencia pública para familias necesitadas. Véase, Ley Púb. Núm. 104-193, sec. 321, 22 de agosto de 1996, 110 Stat. 2105, 2221. Para un análisis de

las legislaciones anteriores a la UIFSA véase, T. Fielding, The Uniform Family Support Act: The New URESA, 20 U. Dayton L. Rev. 425 (1994).

A esos fines, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 180 de 20 de diciembre de 1997, mejor conocida como la Ley Interestatal de Alimentos entre Parientes (LIUAP), 8 L.P.R.A. sec. 541 et seq., en la cual se incorporó la UIFSA a nuestro ordenamiento jurídico. En esta ley se establece un sistema procesal uniforme que busca facilitar todo lo relacionado con las órdenes de pensión alimentaria a menores y ex cónyuges. Véase, Exposición de Motivos, 1997, Leyes de Puerto Rico, págs. 837-838.

> Así, Puerto Rico como estado participante en la reglamentación de la UIFSA, entró en una relación de reciprocidad con todos los demás estados y jurisdicciones norteamericanas, y también con países extranjeros que hubiesen adoptado leyes análogas a la UIFSA y sus sistemas adjudicativos en materia de paternidad y alimentos [en la medida en que] sean compatibles con el debido proceso de ley.
>
> S. Torres Peralta, La Ley de sustento de menores y el derecho alimentario en Puerto Rico, San Juan, Publicaciones STP, 2007, Tomo II, sec. 17.08.

Cuando se aprobó la UIFSA en 1996 se vislumbraron dos propósitos esenciales. El primero fue "proveerle uniformidad a la legislación aplicable a los procedimientos de alimentos interestatales entre los estados [participantes de] la UIFSA". Torres Peralta, op cit., Sec. 17.09. El segundo fue "un sistema procesal uniforme para posibilitar la ejecución de la orden de

pensión alimentaria emitida por el estado emisor en otro estado." Íd. Como se aprecia,

> la UIFSA de 1996 tiene dos facetas que aplicadas integralmente van dirigidas a encauzar los procedimientos hacia la eliminación del anterior e inoperante sistema de órdenes alimentarias múltiples, así como a contar con todas las jurisdicciones para el conocimiento y efectividad de la orden alimentaria única que se emite por el estado emisor...
>
> Íd. Véase, además, J. Sampson, <u>Uniform Interstate Family Support Act (1996) Statutory Text, Prefatory Note, and Commissioners' Comments</u>, 32 Family Law Quarterly 385 (1998).

Así, la LIUAP establece un sistema de una sola orden, el cual se apoya en el principio de jurisdicción continua y exclusiva del tribunal que emite una orden de pensión alimentaria. <u>Aponte v. Barbosa Dieppa</u>, 146 D.P.R. 558, 571 (1998). El Art. 2.205, quizás la disposición más importante de la LIUAP, es el que viabiliza este principio. Véase, <u>Uniform Interstate Family Support Act with prefatory note and comments</u>: <u>http://www.law.upenn.edu/bll/archives/ulc/uifsa/famsuul6.pdf</u> (última visita el 17 de mayo de 2011). Allí se consagra el principio cardinal de que el tribunal que emite una orden de pensión alimentaria en beneficio de un menor solo pierde su jurisdicción continua y exclusiva de dos formas: (1) cuando todas las partes han dejado de residir en ese estado, o (2) cuando todas las partes han consentido por escrito a que un tribunal de otro estado modifique la orden y asuma jurisdicción continua y exclusiva. Art. 2.205 de la LIUAP, 8 L.P.R.A. sec.

542d(a). Véase, además, C. Díaz Olivo y G. Labadie Jackson, Sumario: Análisis del término 2001-2002 del Tribunal Supremo de Puerto Rico: Procesal Civil, 72 Rev. Jur. U.P.R. 551, 558 (2003).

Mientras alguna de las dos excepciones no ocurran, el tribunal que emite la orden es el único con jurisdicción sobre la materia para atender lo relacionado con alimentos. El propósito de esta sección es abandonar el sistema de órdenes de pensiones de alimentos múltiples que prevalecía bajo la Uniform Reciprocal Enforcement of Support Act (URESA), predecesora de la UIFSA. A. Rutkin, Family Law and Practice, Matthew Bender, 2010, Vol. 5, Sec. 48.03.

> Al amparo de la URESA, la mayoría de los procedimientos de pensión alimentaria eran de novo. Aun cuando la orden de alimentos de un estado estaba registrada en otro estado, éste se atribuía el derecho de modificar la orden emitida. Esto significaba que podían existir varias órdenes de pensión de alimentos [sobre un menor] vigentes en diversos estados. Bajo el palio de la UIFSA, el principio de jurisdicción continua y exclusiva tiene como objetivo, en la medida de lo posible, reconocer que solo una orden de pensión de alimentos puede estar vigente.

Sampson, supra, pág. 404. (Traducción suplida.)

De esta forma, una vez que esté vigente una orden de pensión alimentaria existen varias maneras de darle vigor interestatalmente. El método preferido por la UIFSA es registrar la orden en el estado en el que se pretende ejecutar. M. DeMaria, Jurisdictional Issues under the Uniform Interstate Family Support Act, 16 J. Am. Acad. Matrimonial Law 243, 255 (1999). Véase el Art. 6.601 de la

LIUAP, 8 L.P.R.A. sec. 545. Una vez registrada la orden de pensión de alimentos, ésta es ejecutable de la misma forma que una orden emitida por un tribunal de Puerto Rico. Art. 6.603 de la LIUAP, 8 L.P.R.A. sec. 545b. Las Secciones 6.601 a 6.614, 8 L.P.R.A. secs. 545-547e, de la UIFSA regulan lo relativo a este proceso.

El Art. 6.604 de la LIAUP, 8 L.P.R.A. sec. 545c, dispone cuál es el derecho aplicable a la hora de analizar la orden de pensión de alimentos. En particular, el inciso (a) establece:

**§545c Derecho Aplicable**

(a) La ley del estado que emite la orden es la ley que rige la naturaleza, alcance, cantidad y duración de los pagos corrientes y otras obligaciones relacionadas con el deber de alimentar y el pago de las sumas adeudadas bajo dicha orden.

(b) ...

Esta sección deja claramente establecido que la ley del estado que emite la orden es la que rige todo lo relativo a la naturaleza y alcance del deber de alimentar. Sampson, supra, pág. 490. Por ejemplo, un estado que reciba una orden que emitió otro estado debe reconocer y ejecutar un decreto que ordene pagar una pensión de alimentos hasta que el menor cumpla 21 años, sin tomar en consideración que al amparo de su ley la obligación de alimentar al menor cese a los 18 años. Véanse, González-Goengaga v. González, 426 So. 2d. 1106 (Fla. 1983); In re Marriage of Taylor, 122 Cal. App. 3d 209 (1981); Sampson, supra, págs. 490-491.

De igual forma, tenemos que concluir, con seriedad académica, que la ley del estado es la que rige el alcance de la obligación alimentaria y la responsabilidad de satisfacerla. Eso incluye quiénes son las personas llamadas a alimentar. Ese es el esquema que contempla la L.I.U.A.P., dado que se trata de un asunto para el cual cada estado puede adoptar medidas diferentes que, incluso, modifiquen las reglas del *common law*.

De esta forma, "un tribunal de Puerto Rico reconocerá y ejecutará una orden registrada, pero no podrá modificarla si el tribunal que ha emitido la misma tenía jurisdicción". Art. 6.603(e) de la LIUAP, 8 L.P.R.A. sec. 545b(e). Esto implica que al implementar una orden de alimentos de otro estado no le corresponde a nuestros tribunales dilucidar la sabiduría de la legislación del otro estado que también haya incorporado a su ordenamiento jurídico la UIFSA u otra legislación similar. Por el contrario, tenemos el deber ineludible de ejecutar dicha orden.

En el caso que nos ocupa el tribunal del estado de Florida fue el que le concedió primero la custodia temporal y luego la permanente del menor J.S.B.L. al matrimonio Solá-Moreno. Además, fue el que emitió una orden de pensión alimentaria a favor del menor J.S.B.L. el 4 de diciembre de 2007 en la que ordenó a cada padre pagar la cantidad de $240. Desde ese momento, dicho tribunal se convirtió en el único foro con jurisdicción para atender todo asunto de alimentos relativo al menor J.S.B.L.

Precisamente el objetivo que se intentó alcanzar con la UIFSA fue que no existieran múltiples órdenes de alimentos a la vez, contrario a lo que ocurrió aquí.

De esta forma, nuestro análisis se centra en auscultar si el tribunal del estado de Florida ha perdido la jurisdicción continua y exclusiva sobre el asunto de la reclamación de alimentos del menor J.S.B.L.

En nuestra jurisprudencia acerca del derecho de familia, los términos domicilio y residencia se han utilizado de forma equivalente. Prawl v. Lafita Delfín, 100 D.P.R. 35, 38 (1971). No obstante, estos conceptos no son sinónimos. Íd., pág. 37. El tratadista Vázquez Bote, luego de analizar los antecedentes históricos y jurisprudenciales de estos términos, concluye que el domicilio es "el lugar de residencia habitual en que efectivamente se está y se quiere estar". E. Vázquez Bote, Concepto del Domicilio en Derecho Puertorriqueño, 61 Rev. Jur. U.P.R. 25, 50 (1992). En cambio, la residencia es "el lugar en que una persona se encuentra, durante más o menos tiempo, accidental o incidentalmente, sin intención de domiciliarse. Íd.

En otras palabras, el domicilio se puede definir como la "residencia habitual deseada y realizada". Íd, pág. 48. De esta forma, "[e]l domicilio supone una proyección temporal, conforme con la nota de habitualidad, mientras que la residencia se define por el hecho de estar". Íd, pág. 50. Véanse, además, Zarelli v. Registrador, 124

D.P.R. 529 (1989), P.P.D. v. Admor. Gen. de Elecciones, 111 D.P.R. 199, 257 (1981).

En lo que nos ocupa, la L.I.U.A.P. utiliza en todo momento el término de residencia y no el de domicilio. Véanse, Arts. 1.101, 2.202, 2.205, 8 L.P.R.A. secs. 541, 542a, 542d; J. Sampson, B. Brooks, Uniform Interstate Family Support Act (2001), with prefatory Note and Comments, 36 Fam. L. Q. 329, 368-369 (2002-2003). Por el contrario, en los alegatos de las partes se dedica gran parte a discutir cuál es el domicilio del menor J.S.B.L. y el de su padre. Sin embargo, la interrogante medular en el caso que nos ocupa es auscultar si la residencia de los padres del menor se encuentra en el estado de Florida.

Al analizar minuciosamente el expediente, notamos que no hay prueba en este que demuestre cuál es la residencia de los padres del menor J.S.B.L. De igual forma, el expediente se encuentra huérfano de evidencia que pruebe que los padres del menor J.S.B.L. hayan consentido por escrito a que el tribunal de Puerto Rico asuma jurisdicción sobre el asunto. Por ello, no se configura la segunda excepción que contempla el Art. 2.205, supra.

Debido a que no se presentó prueba sobre la residencia de los padres del menor J.S.B.L., es necesario devolver el caso al Tribunal de Primera Instancia para que este celebre una vista a esos efectos. Si se demostrara que la residencia de alguno de los padres se encuentra en Florida, no se cumpliría con la primera excepción que contempla el Art. 2.205, supra. Por consiguiente, los

tribunales de Puerto Rico no tendrían jurisdicción para atender el asunto.

IV

El ex Juez Asociado señor Serrano Geyls señala que "[l]a obligación de los llamados a alimentar en el *common law* es de los esposos y de los padres a sus hijos". R. Serrano Geyls, Derecho de familia de Puerto Rico y legislación comparada, San Juan, Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, Facultad de Derecho, 2002, T.2, pág. 1448. Es decir, "[n]o existe obligación alguna entre otros parientes consanguíneos o afines". Íd. De esta forma, como regla general en el *common law* de Estados Unidos no existe un deber de alimentar entre ascendientes y descendientes.

En cambio, en Puerto Rico y en el estado de Lousiana la obligación de alimentar sí se extiende a los descendientes y ascendientes recíprocamente. Véanse, Art. 143 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 562; Art. 229 del Código Civil de Lousiana, La. Civ. Code. Art. 229. Esta situación presenta la controversia de si los reclamos que puedan hacer los nietos a sus abuelos quedan cobijados bajo el mandato de la UIFSA, o si por el contrario, no quedan amparados y el principio de jurisdicción continua y exclusiva del tribunal que emite una orden de pensión alimentaria es inaplicable.

Para poder contestar esa interrogante es necesario acudir al Art. 1.101 de la LIUAP, 8 L.P.R.A. sec. 541, que contiene una serie de definiciones. En específico, los

incisos 12 y 13 definen los conceptos de alimentista y

alimentante. Estos esbozan lo siguiente:

**§541. Definiciones**

En este capítulo:

**(1)...**

**(12) (a) Alimentista.** Significa la persona a quien se le adeuda, o se alega que se le adeuda, o a cuyo favor se ha emitido una orden de pensión alimentaria o a favor de quien se hace una determinación de filiación;

**(b)** el estado o subdivisión política al cual se le han cedido los derechos de la obligación de alimentar o de una orden de pensión alimentaria o que tiene reclamaciones separadas que surgen de la concesión de asistencia económica a un alimentista, o

**(c)** la persona que solicita que se determine la filiación de su hijo.

**(13) (a) Deudor o alimentante.—** Significa la persona o el caudal hereditario de un causante, que debe o se alega que debe la obligación de prestar alimentos;

**(b)** que se alega es el padre, pero respecto al cual no ha sido determinada la filiación del menor, o

**(c)** que es responsable de satisfacer una orden de pensión alimentaria.

Art. 1.101, 8 L.P.R.A. sec. 541.

Un análisis de estos dos incisos refleja que el

legislador optó por definiciones amplias y abarcadoras de

los términos alimentista y alimentante. De esta forma,

cualquier persona que en alguna medida sea responsable de

satisfacer una orden de pensión alimentaria es considerado

alimentante al amparo de la LIUAP. De igual manera, toda

persona a quien se le adeude dinero por concepto de

pensión alimentaria es un alimentista bajo el palio de la

LIUAP. Cabe señalar que esta legislación es un calco en español de la ley modelo UIFSA. Sin embargo, al analizar los comentarios que acompañan a la ley modelo no hallamos limitación alguna a las definiciones abarcadoras de alimentista y alimentante. Véase, Sampson, supra, págs. 413-414.

Por el contrario, al auscultar estos comentarios encontramos la siguiente expresión sobre estas definiciones:

> Los términos alimentante y alimentista contienen de forma inherente la obligación legal de pagar o recibir alimentos y ambos términos también se refieren implícitamente a las personas con el deber de prestar alimentos a un menor. El sistema de una sola orden de la U.I.F.S.A. sólo puede tener éxito si las respectivas obligaciones de alimentar se ajustan según cambie la posesión física de un menor entre sus padres o un tercero que se haga cargo de él. Esto debe realizarse en el contexto de la modificación de una orden, y no por la creación de órdenes múltiples que pretendan reflejar cada cambio de custodia.[1]
>
> J. Sampson, B. Brooks, Uniform Interstate Family Support Act (2001), with prefatory Note and Comments, 36 Fam. L. Q. 329, 352 (2002-2003). (Traducción suplida.)

_____

[1] El texto en inglés del comentario reza de la siguiente forma:

> The terms "obligor" and "obligee" inherently contain the legal obligation to pay or receive support, and both terms also implicitly refer to the individuals with a duty to support a child. The one-order system of UIFSA can succeed only if the respective obligations of support are adjusted as the physical possession of a child changes between parents or involves a third party caretaker. This must be accomplished in the context of modification, and not by the creation of multiple orders attempting to reflect each changing custody scenario.

Es conocido que "[l]as palabras no habitan un universo propio, desvinculado del mundo que las genera y al que se refieren... El lenguaje es tan sólo inteligible en función de ese mundo. El lenguaje jurídico en especial deriva su significado de las realidades que lo forjan y alteran". Pueblo v. Tribunal Superior, 104 D.P.R. 363, 366 (1975). (cita omitida.)

Así, el primer paso en el análisis de una legislación es determinar si el lenguaje es simple y preciso en relación con la controversia particular del caso. González González v. González Hernández, Op. de 27 de abril de 2011, 2011 T.S.P.R. 65, 2011 J.T.S. __, 181 D.P.R. __ (2011); Yiyi Motors, Inc. v. E.L.A., Op. de 14 de octubre de 2009, 2009 T.S.P.R. 159, pág. 15, 2009 J.T.S. 162, 177 D.P.R. __, (2009). Véanse, además, Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002); Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). De ser así, procede terminar el análisis y utilizar la acepción simple y clara del lenguaje pues "[c]uando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa". Silva v. Adm. Sistemas de Retiro, 128 D.P.R. 256, 269 (1991). Véanse, además, Atiles, Admor. v. Comisión Industrial, 77 D.P.R. 16, 20 (1954); United States v. Velastegui, 199 F.3d 590, 594 (2d Cir. 1999).

En otras palabras, mientras una legislación sea coherente y consistente no hay necesidad de escudriñar más

allá de su lenguaje simple. <u>Yiyi Motors, Inc. v. E.L.A.</u>, <u>supra</u>; <u>In re Palau Corp.</u>, 18 F.3d 746 (9th Cir. 1994). Asimismo, el lenguaje simple y preciso de una legislación solo puede ser rechazado si existe evidencia patente que apoye una interpretación contraria. <u>González González v. González Hernández</u>, <u>supra</u>; <u>Matala v. Consolidation Coal Co.</u>, 647 F.2d 427, 429 (4th Cir. 1981).

En ocasiones, existen palabras que pueden producir que un lenguaje se torne ambiguo u oscuro. Elfren Bernier y Cuevas Segarra, <u>Aprobación e Interpretación de las leyes en Puerto Rico</u>, 2da ed., San Juan, Publicaciones J.T.S., 1987, Vol.1, pág. 271. Por esa razón, cuando hay un lenguaje confuso es deber del Tribunal llenar esas lagunas y armonizar las disposiciones que encuentre conflictivas. <u>Roig Commercial Bank v. Buscaglia, Tes.</u>, 74 D.P.R. 986 (1953). Sin embargo, como bien señala el Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".

Así pues, el hecho de que un lenguaje sea amplio no significa que sea ambiguo. Por consiguiente, tras un estudio del propósito de la LIUAP concluimos que las reclamaciones de alimentos entre nietos y abuelos sí están cobijadas al amparo de esta legislación, pues quedan recogidas en las definiciones amplias de alimentante y alimentista. Por ende, también le aplican el principio de

jurisdicción continua y exclusiva discutido anteriormente.

Resolver lo contrario sería crear una excepción no

legislada a las definiciones abarcadoras de alimentante y

alimentista.

V

Finalmente, debemos analizar cuáles son las

consecuencias de que nuestros tribunales tengan o carezcan

de jurisdicción sobre la materia. En la alternativa de que

los Tribunales de Puerto Rico cuenten con jurisdicción, el

matrimonio Solá-Moreno debe registrar la orden de

alimentos y cumplir con los requisitos establecidos en el

Art. 6.611 de la LIUAP, 8 L.P.R.A. sec. 547b.[2] Una vez el

---

[2] El Art.6.611 lee en su totalidad de la siguiente forma:
**Modificación de la orden de pensión alimentaria de un menor emitida en otro estado**

**(a)** Luego que se registra en Puerto Rico la orden de pensión alimentaria de un menor, emitida en otro estado, el tribunal recurrido de Puerto Rico puede modificar dicha orden únicamente en el caso en que la sec. 547e de este título no sea aplicable y luego de cumplir con el requisito de notificación y vista determina que:

    **(1)** Los siguientes requisitos se han cumplido:

      **(A)** El menor, el alimentista y el alimentante no residen en el estado que emite la orden;

      **(B)** el peticionario, quien no es residente de Puerto Rico, solicita que se modifique la orden; y

      **(C)** el demandado está sujeto a la jurisdicción del tribunal de Puerto Rico; o

(continúa...)

Tribunal de Puerto Rico modifique la orden, se convierte en el tribunal de jurisdicción continua y exclusiva en lo referente al asunto de alimentos del menor J.S.B.L. Por el contrario, si los tribunales de Puerto Rico no tuvieran jurisdicción para antender el reclamo, el matrimonio Solá-Moreno tendría la opción de registrar la orden de pensión alimentaria emitida por el estado de Florida en la

---

**(2)** el menor o una de las partes está sujeto a la jurisdicción sobre la persona del tribunal de Puerto Rico y todas las partes han presentado por escrito su consentimiento en el estado que emitió la orden para que el tribunal de Puerto Rico pueda modificar la orden de pensión alimentaria y asumir jurisdicción continua y exclusiva sobre la misma. Sin embargo, si el estado que emite la orden es una jurisdicción extranjera que no ha aprobado una ley o establecido procedimientos sustancialmente similares a los procedimientos bajo este capítulo, el consentimiento que de otra manera hubiera sido requerido de una persona que resida en Puerto Rico, no se requerirá para que el tribunal asuma jurisdicción para modificar la orden de pensión alimentaria del menor.

**(b)** La modificación de una orden de pensión alimentaria de un menor que ha sido registrada está sujeta a los mismos requisitos, procedimientos y defensas aplicables a la modificación de una orden emitida por un tribunal de Puerto Rico y la orden podrá ser ejecutada y asegurada de la misma forma.

**(c)** Un tribunal de Puerto Rico no podrá modificar ningún aspecto de la orden de pensión alimentaria de un menor que no pueda ser modificado bajo la ley del estado que emite la orden. Si dos o más tribunales han emitido órdenes de pensión alimentaria para un menor siendo el alimentante y el menor los mismos, la orden que tiene preferencia y debe ser reconocida según lo dispuesto en la sec. 542f de este título establecerá los aspectos de la orden de pensión alimentaria que no son susceptibles de ser modificados.

**(d)** Al expedirse una orden modificando una orden de pensión alimentaria de un menor emitida en otro estado, el tribunal de Puerto Rico se convierte en el tribunal de jurisdicción continua y exclusiva.

Administración para el Sustento de Menores para que ésta la ejecute administrativamente. Véase el Art. 5.507 de la LIUAP, 8 L.P.R.A. sec. 544g.[3]

En ese supuesto, el hecho de que la ley en el estado de Florida sea diferente no significa que vayamos a descartarla y eludir la realidad de que posiblemente ella sea la que determine todo lo relacionado a la pensión de alimentos del menor J.S.B.L. Véanse, Fla. Stat. Secs. 61.13, 61.30; Thalgott v. Thalgott, 571 So. 2d. 1368, 1370 (Fla. 1990). En otras palabras, no podemos negar la jurisdicción y la aplicación de la ley de un estado de la Unión por el mero hecho de que su legislación no es igual a la nuestra. Le debemos dar entera fe y crédito a esa ley. Véanse, Art. IV, Sec. I de la Constitución de los Estados Unidos de América, 1 L.P.R.A., ed. 2008, pág. 177; Baker v. GMC, 522 U.S. 222, 232 (1998); Milwaukee County

---

[3] **§ 544g. Ejecución administrativa de órdenes**

**(a)** La parte que solicita el cumplimiento de una orden de pensión alimentaria o una orden de retención de ingresos, o ambas, emitida por un tribunal de otro estado podrá enviar los documentos requeridos para el registro de la orden a la Administración para el Sustento de Menores de Puerto Rico.

**(b)** Una vez recibidos los documentos, la agencia de sustento de menores, previo el registro de la orden, considerará y si lo estima apropiado, utilizará cualquier procedimiento administrativo autorizado por la ley de Puerto Rico para ejecutar la orden de pensión alimentaria o la orden de retención de ingresos, o ambas. Si el alimentante no objeta la validez o la ejecución de la orden por la vía administrativa, la agencia de sustento de menores registrará la misma según se dispone en este capítulo.

v. M. E. White Co., 296 U.S. 268, 277 (1935).

Debido a que el planteamiento jurisdiccional no se ha resuelto, declinamos entrar en los méritos de la alegación del señor Bengoa Becerra referente a la subsidiaridad y mancomunidad de la obligación de alimentar a su nieto.

VI

Por los fundamentos anteriormente expuestos, se confirma la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que realice una vista en la que se presente prueba de la vigencia de la orden de alimentos emitida por el estado de Florida y de la residencia de los padres del menor J.S.B.L. Así, se podrá determinar si nuestros tribunales cuentan con jurisdicción sobre la materia para ventilar el asunto de alimentos.

Se dictará Sentencia de conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Bernando Solá Gutiérrez,
Maldrid Maldonado y la
Sociedad Legal de Bienes
Gananciales compuesta
por ambos

      Recurridos                AC-2010-049

           v.

Esteban R. Bengoa Becerra

      Peticionario


SENTENCIA

En San Juan, Puerto Rico, a 11 de agosto de 2011.

Por los fundamentos anteriormente expuestos, en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que realice una vista en la que se presente prueba de la vigencia de la orden de alimentos emitida por el estado de Florida y de la residencia de los padres del menor J.S.B.L. Así, se podrá determinar si nuestros tribunales cuentan con jurisdicción sobre la materia para ventilar el asunto de alimentos.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita a la que se unen el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta. La Jueza Asociada señora Pabón Charneco no interviene.

          Aida I. Oquendo Graulau
       Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Bernardo Solá Gutiérrez,
Maldrid Maldonado y la
Sociedad Legal de Bienes
Gananciales compuesta por
ambos

    Recurridos

        v.

Esteban R. Bengoa Becerra

    Peticionario

AC-2010-49

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 11 de agosto de 2011

Hoy, una mayoría de este Tribunal interpreta la *Ley Interestatal Uniforme de Alimentos entre Parientes*, *infra*, para resolver que una vez un tribunal de otra jurisdicción emite una orden de alimentos a favor de un menor, nuestros tribunales carecen de jurisdicción para entender en una reclamación de alimentos presentada por un menor en contra de su abuelo, en virtud del deber de alimentos entre parientes reconocido en nuestro Código Civil, 31 L.P.R.A. sec. 561, *et seq*.

En su curso interpretativo, la mayoría pasa por alto que las limitaciones jurisdiccionales de nuestra ley interestatal de alimentos, no aplican al tipo de

obligación que posibilita la reclamación de alimentos que hoy nos ocupa. Ello, pues se trata de una obligación independiente que quedó fuera del marco de aplicación del estatuto. Además, ambas partes residen en Puerto Rico y no existe una orden vigente en contra del abuelo, ya que éste no formó parte del proceso celebrado en la otra jurisdicción. Es decir, la pensión impuesta en este caso no trastoca en lo absoluto los postulados de la referida legislación.

Por las razones que expongo a continuación, y porque creo que hoy se toma una decisión lamentable y desacertada, disiento.

I

El señor Esteban R. Bengoa Becerra y la señora Maldrid Moreno Maldonado procrearon al señor Javier Bengoa Moreno. De la unión de este último y la señora Danette Linares, nació el menor J.S.B.L. en el estado de Florida, el 30 de enero de 2000. El 30 de octubre de 2007, la custodia temporal del menor pasó a manos de la señora Moreno Maldonado, abuela paterna, y de su actual esposo, el señor Bernardo Solá Gutierrez. Ello en virtud de una orden emitida por la Corte para el Noveno Circuito del Condado de Orange, Florida (en adelante, "Corte de Florida") en un caso de remoción de custodia presentado contra los padres biológicos por razón de maltrato hacia el menor. No obstante, en esa ocasión, la Corte de Florida no fijó una

pensión alimentaria para el menor.[4] Ese mismo año, el matrimonio Moreno-Solá se trasladó con el menor a Puerto Rico, donde residen actualmente.

Se alega que más adelante, el 4 de diciembre de 2007, la Corte de Florida le impuso a cada uno de los padres del menor J.S.B.L. la obligación de proveer una pensión alimentaria de $240 mensuales, para un total de $480.[5] Ante el incumplimiento de los padres con el plan de reunificación familiar, el 9 de febrero de 2009, la Corte de Florida emitió una orden en la que confirió al matrimonio Moreno-Solá la custodia permanente del menor (*permanent guardianship*).[6] Surge de la orden, que la Corte de Florida invistió al matrimonio Moreno-Solá con todos los deberes relacionados al cuidado del menor, entre éstos, el de proveerle alimentos hasta alcanzar la mayoría de edad. *Id.* Nada expresó ese tribunal sobre la orden de alimentos del 4 de diciembre de 2007.

---

[4] Determinación de hecho número 2 del Tribunal de Primera Instancia, pág. 62 del Apéndice, Petición de *certiorari*.

[5] Como se verá más adelante, la controversia sobre esta orden surgió por primera vez en la etapa apelativa, por lo que el Tribunal de Primera Instancia no la tomó en consideración al emitir la orden de alimentos. Por el contrario, conforme al testimonio de la señora Moreno Maldonado, el Tribunal de Primera Instancia determinó que no se había fijado una pensión alimentaria a los padres biológicos del menor. Determinación de hecho número 3 del Tribunal de Primera Instancia, pág. 3 del Apéndice, Petición de *certiorari*.

[6] *Orden placing con fecha 9 de febrero 2009* – Parte demandante. Exhibit 2 de la prueba admitida por el Tribunal de Primera Instancia, pág. 86 del Apéndice, Petición de *certiorari*.

Entretanto, el abuelo paterno del menor, el señor Bengoa Becerra, había acordado con la señora Moreno Maldonado aportar la suma de $500 mensuales para sufragar los gastos de manutención del nieto de ambos, e hizo pagos por la referida cantidad. No obstante, posteriormente el señor Bengoa redujo la cantidad de dinero en los pagos, por lo que la señora Moreno Maldonado se negó a aceptarlos, razón que el señor Bengoa adujo para dejar de efectuarlos.[7]

Como secuela de lo anterior, el 13 de abril de 2009, el matrimonio Moreno-Solá presentó una demanda de alimentos contra el señor Esteban R. Bengoa Becerra en el Tribunal de Primera Instancia, sala de Caguas, Puerto Rico.[8] En la demanda, el matrimonio Moreno-Solá adujo que los padres biológicos no habían provisto cantidad de dinero alguna para la manutención del menor y que éstos eran incapaces de aportar. Además, alegó en la demanda que el señor Bengoa Becerra había incumplido un acuerdo alcanzado con la señora Moreno Maldonado para el pago de $500 mensuales para la manutención de su nieto. Por lo anterior, solicitaron que se impusiera una pensión alimentaria en contra del abuelo, el señor Bengoa Becerra, en beneficio del menor J.S.B.L., de conformidad con nuestro ordenamiento.[9]

---

[7] Determinaciones de hecho número 15-17 del Tribunal de Primera Instancia, pág. 65 del Apéndice, Petición de *certiorari*.

[8] Posteriormente, el caso fue trasladado al Tribunal de Primera Instancia de Humacao.

[9] Demanda, pág. 15 del Apéndice, Petición de *certiorari*.

(continúa...)

Posteriormente, el señor Bengoa Becerra presentó una moción de desestimación en la que alegó que el tribunal estaba impedido de atender el caso por no tener jurisdicción sobre la materia. Fundamentó su posición en el hecho que el menor J.S.B.L. nació en el estado de Florida, localidad que a su vez era el domicilio de los padres del menor, por lo que los tribunales de ese estado retenían la jurisdicción sobre todo asunto relacionado al menor. El foro de primera instancia proveyó no ha lugar a la moción. De esa decisión, el señor Bengoa Becerra recurrió ante el Tribunal de Apelaciones, el cual confirmó la determinación del Tribunal de Primera Instancia, en un dictamen del cual no se recurrió.[10]

Devuelto el caso al Tribunal de Primera Instancia, se celebró una vista de alimentos el 1 de septiembre de 2009, la cual se trató como *vista sobre pensión provisional*. El día de la vista, el señor Bengoa Becerra planteó nuevamente la falta de jurisdicción, a lo que el tribunal declaró no ha lugar. La prueba presentada en la vista consistió del testimonio de la abuela demandante la señora Maldrid Moreno Maldonado y del abuelo demandado el señor Esteban R. Bengoa Becerra, así como de varios documentos cuya admisibilidad fue estipulada por las partes.[11]

---

[10] Sentencia del Tribunal de Apelaciones, KLCE2009-1218, pág. 56 del Apéndice, Petición de *certiorari*.

(continúa...)

Posteriormente, el 13 de octubre de 2009, el demandado presentó una segunda moción de desestimación en la que alegó que en la vista de alimentos los demandantes no presentaron evidencia para probar la incapacidad económica de los padres biológicos del menor. El foro primario la declaró no ha lugar mediante una orden notificada el 20 de octubre de 2009.

Ese mismo día, el Tribunal de Primera Instancia notificó una resolución dictada el 16 de octubre de 2009, en la que resolvió que se había probado que el menor J.S.B.L. tenía una necesidad de alimentos que sus padres habían sido, y eran, incapaces de satisfacer. A la luz de lo anterior, y en ausencia de alegaciones sobre otros parientes obligados en grado más próximo a los abuelos, coligió que procedía imponerle a éstos la obligación de proveer alimentos al menor. En ese tenor, y a la luz de la prueba admitida por el tribunal, impuso al señor Bengoa Becerra una **pensión provisional** de $1,140.98 mensuales, lo que representa el 50% del total de los gastos básicos y suplementarios del menor.

Insatisfecho con la resolución anterior, el señor Bengoa Becerra presentó oportunamente un recurso de *certiorari* ante el Tribunal de Apelaciones en el que se limitó a cuestionar la imposición y cuantía de la pensión alimentaria, no así la jurisdicción del tribunal para

---

[11] Resolución del Tribunal de Primera Instancia, Caso Civil Núm. HSRF 09-00564, pág. 61 del Apéndice, Petición de *certiorari*.

entender en el caso. Casi dos meses después, el 18 de enero de 2010, el recurrente informó -por primera vez en los procedimientos desde que se iniciaron ante el Tribunal de Primera Instancia- de la existencia de la orden de alimentos emitida por la Corte de Florida. Descansando en dicha orden, nuevamente solicitó la desestimación de la demanda por falta de jurisdicción sobre la materia al entender que la Corte de Florida era el único foro con jurisdicción para entender en cualquier asunto relacionado a los alimentos del menor.

El Tribunal de Apelaciones emitió una sentencia y confirmó la decisión del Tribunal de Primera Instancia en la que se había fijado la pensión alimentaria provisional. No obstante, el foro intermedio se abstuvo de dilucidar el planteamiento jurisdiccional esgrimido por el peticionario, al razonar que era el foro de primera instancia el adecuado para resolver qué efecto, si alguno, tenía la orden de alimentos del estado de Florida sobre la pensión impuesta. Esto, ya que al haber surgido esta controversia por primera vez en la etapa apelativa, el foro primario no tuvo la oportunidad de tomarla en consideración previo a emitir su dictamen.

Aún inconforme, el señor Bengoa Becerra presentó un recurso de apelación ante este Tribunal en el que adujo que debía revocarse la decisión del foro intermedio por tres razones, a saber: (1) que la Corte de Florida es el único foro con jurisdicción sobre el menor y sobre la orden de

pensión alimentaria; (2) que no procedía que el tribunal le impusiera una pensión alimentaria sin antes realizar una determinación de incapacidad económica de los padres biológicos; y (3) que la responsabilidad impuesta debía ser mancomunada y no solidaria.

Días después de haberse presentado el recurso antes mencionado, el matrimonio Moreno-Solá presentó una moción ante el Tribunal de Primera Instancia en la que solicitó que se hallara al demandado incurso en desacato por incumplir con el pago de la pensión alimentaria impuesta previamente. Ante la inminencia de la celebración de una vista de desacato, el señor Bengoa Becerra presentó una moción en auxilio de nuestra jurisdicción y solicitó que paralizáramos el proceso ante el foro primario hasta que se atendiera el recurso presentado ante este Tribunal. El 23 de julio de 2010, emitimos una resolución para acoger el recurso de apelación como un *certiorari* y ordenamos paralizar. Ambas partes presentaron sus respectivos alegatos ante este Tribunal.

Una vez tenemos un cuadro adecuado de los hechos que rodean la controversia que nos ocupa, examinemos el Derecho aplicable.

## II

### A

El 20 de diciembre de 1997, la Asamblea Legislativa aprobó la Ley Interestatal Uniforme de Alimentos entre Parientes (en adelante "L.I.U.A.P."), Ley Núm. 180 de 20 de

diciembre de 1997, 8 L.P.R.A. sec. 541 *et seq.* A través de esta ley se adoptó en Puerto Rico la *Uniform Interstate Family Support Act* (en adelante "U.I.F.S.A."). La U.I.F.S.A. es la versión revisada de una serie de estatutos modelos aprobados por la *National Conference of Commissioners on Uniform State Laws* durante el siglo pasado, dirigidos principalmente a uniformar los procedimientos de reconocimiento y ejecución de órdenes de alimentos entre los estados, territorios de Estados Unidos y el Estado Libre Asociado de Puerto Rico. *Véase*, T.M. Fielding, *The Uniform Interstate Family Support Act: The New URESA*, 20 Dayton L. Rev. 425, 447 (1994).[12]

---

[12] Como ya hemos expresado en otras ocasiones, la U.I.F.S.A. es un estatuto modelo cuya adopción fue requerida por el Congreso de Estados Unidos -mediante legislación- como requisito para que Puerto Rico y los estados pudieran participar de unos fondos federales para los programas de sustento de menores y asistencia pública a familias necesitadas. *Véase*, *Santiago v. Rodríguez*, 161 D.P.R. 826, 831 (2004); *Aponte v. Barbosa Dieppa*, 146 D.P.R. 558, 567 (1998).

La primera versión de la U.I.F.S.A. fue aprobada en el 1992. Posteriormente, en 1996, sufrió varias enmiendas importantes inspiradas en la necesidad de formular unas guías claras para la ejecución de las órdenes de alimentos en un estado distinto al cual emitió la orden inicial. Precisamente, la versión adoptada en nuestro ordenamiento a través de la Ley Núm. 180 de 20 de diciembre de 1997, fue la U.I.F.S.A. de 1996. No obstante, es menester señalar que el estatuto modelo fue enmendado en dos ocasiones posteriores, en 2001 y 2008.

Al día de hoy, todos los estados y territorios de Estados Unidos, al igual que el Estado Libre Asociado de Puerto Rico, como vimos, han adoptado alguna de las versiones de la U.I.F.S.A. como parte de sus respectivos ordenamientos. A pesar de que varios de ellos han enmendando sus leyes con el fin de incorporar las enmiendas de 2001 y 2008, ese no es nuestro caso, por lo que, salvo

(continúa...)

Previo a la implementación de los estatutos interestatales de alimentos, la parte alimentista enfrentaba serias dificultades para poder cobrar y recibir su sustento. Por ejemplo, no existían mecanismos directos para ejecutar una orden de alimentos contra un alimentante si éste abandonaba el estado en que residía, lo que promovía que éste acudiera a distintos estados en búsqueda de alguna legislación que le facilitara modificar la orden de alimentar vigente. *Véase*, *Id*., pág. 426. Recaía en la parte alimentista la onerosa gestión de movilizarse hasta el nuevo estado de residencia del alimentante con el fin de iniciar una nueva acción de alimentos en su contra. *Id.*

En aras de atender esa realidad, se diseñaron varios estatutos modelos, los cuales en mayor o menor grado, fueron incorporados por los estados como parte de sus respectivos ordenamientos. No obstante, aun bajo los estatutos anteriores a la U.I.F.S.A., cabía la posibilidad de que, a pesar de estar vigente una orden, otro tribunal emitiera una nueva o modificara la ya existente. Esto conllevaba que múltiples órdenes de pensión alimentaria podían estar vigentes al mismo tiempo, en cuanto a un mismo alimentante y alimentista, permitiendo la doble exposición de un alimentante. *Véanse*, T.M. Fielding, *op. cit.*, pág.

---

expresión en contrario, al hablar de la U.I.F.S.A. únicamente nos referimos a la versión de 1996. Para un análisis detallado de la U.I.F.S.A. de 2001 y su posible incorporación a nuestro ordenamiento, *véase*, S. Torres Peralta, *La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico*, Publicaciones STP, Inc., San Juan, 2006, págs. 17.01 – 17.54.

458; M. DeMaria, *Jurisdictional Issues under the Uniform Interstate Family Support Act*, 16 J. Am. Acad. Matrimonial Law 243, 244 (1999); P. Wick Hatamyar, *Critical applications and proposals for improvements of the Uniform Interstate Family Support Act and the Full Faith and Credit for Child Support Orders Act*, 71 St. John's Law Review 1, 5-6 (1997).[13]  Así, la aprobación de la U.I.F.S.A. fue impulsada por el objetivo de facilitar y uniformar los procedimientos para el establecimiento y ejecución de órdenes de alimentos en casos interestatales. *Véase*, Nota prologal, *Uniform Interstate Child Support Act (1996)*, 9 U.L.A., págs. 285-89.

Sin embargo, del texto de la U.I.F.S.A., adoptada en nuestra L.I.U.A.P., se desprenden una multiplicidad de vías o mecanismos que atienden los problemas mencionados anteriormente.[14]  De éstos, los hechos del caso de autos

---

[13] En palabras del autor: "Frequently, two or more valid court orders from different states established entirely different support obligations for the **same obligor and child,** engendering uncertainty and complicating the calculation of arrearages".  P. Wick Hatamyar, *Critical applications and proposals for improvements of the Uniform Interstate Family Support Act and the Full Faith and Credit for Child Support Orders Act*, 71 St. John's L. Rev. 1, 5-6 (1997) (Énfasis nuestro y citas omitidas).

[14] El ámbito de aplicación de la L.I.U.A.P. afecta a un sinnúmero de situaciones o procedimientos, a saber:

> (a) Excepto cuando se provea otra cosa en este capítulo, esta sección aplica a todos los procedimientos al amparo de este capítulo.
> (b) Este capítulo provee para los siguientes procedimientos:

(continúa...)

canalizan nuestra atención a lo dispuesto en la ley sobre

el establecimiento, cumplimiento y modificación de órdenes

de alimentos a favor de un menor.  Veamos.

---

(1) Emisión de una orden de pensión alimentaria de ex cónyuges o de menores según se dispone en la sec. 544 de este título;

(2) ejecución de una orden de pensión alimentaria y retención de ingresos de otro estado sin necesidad de registro según se dispone en las secs. 544a a 544g de este título;

(3) registro de una orden de pensión alimentaria de ex cónyuges o de pensión alimentaria para menores emitida por otro estado según se dispone en las secs. 545 a 547e de este título;

(4) modificación de una orden de pensión alimentaria para menores o ex cónyuges emitida por un tribunal de Puerto Rico según se dispone en las secs. 542b a 542e de este título;

(5) registro de una orden de pensión alimentaria para menores de otro estado para que sea modificada según se dispone en las secs. 545 a 547e de este título;

(6) determinación de filiación según se dispone en la sec. 548 de este título, y

(7) adquisición de jurisdicción sobre personas no residentes según se dispone en las secs. 542 a 542b de este título.

(c) Una persona o la agencia de sustento de menores podrá iniciar un procedimiento al amparo de este capítulo presentando una petición en un tribunal iniciador para que sea remitida a un tribunal recurrido o presentando una petición o reclamación comparable directamente en un tribunal de otro estado que tenga o pueda adquirir jurisdicción sobre su persona.

8 L.P.R.A. sec. 543.

Cabe destacar que la ley fomenta el que los tribunales de Puerto Rico se comuniquen con los tribunales de los estados a través de cualquier medio, con el propósito, entre varios, de obtener información relacionada al efecto de sentencias, órdenes o decretos del tribunal estadual o del estatus de los procedimientos pendientes ante ese estado. 8 L.P.R.A. sec. 543p.

B

Con el propósito de erradicar los defectos prácticos que caracterizaron a los estatutos anteriores, tanto la U.I.F.S.A. como nuestra L.I.U.A.P., establecen que, en lo posible, no debe existir más de una orden de alimentos en determinado momento. *Aponte v. Barbosa Dieppa,* 146 D.P.R. 558, 570-71 (1996). Para viabilizar ese objetivo, se estableció el principio de jurisdicción continua y exclusiva, según estatuido en la sección 542(d) de la L.I.U.A.P., equivalente a la sec. 205 de la U.I.F.S.A. 8 L.P.R.A. sec. 542d(c); 9 U.L.A. sec. 205, pág. 349; *Aponte v. Barbosa Dieppa*, *ante*. De acuerdo con el referido precepto, un tribunal que emite una orden de pensión alimentaria en beneficio de determinado alimentista, retiene jurisdicción continua y exclusiva **sobre la orden** y, salvo circunstancias limitadas, es el único tribunal con jurisdicción para modificarla. 8 L.P.R.A. sec. 542d; *Aponte v. Barbosa Dieppa, ante,* pág. 571. De igual forma, una vez un tribunal adquiere jurisdicción continua y exclusiva sobre una orden, la ley proscribe que otro foro dicte una segunda orden de alimentos en contra del mismo alimentante y alimentista. 8 L.P.R.A. sec. 541.

A manera de excepción, la orden podrá modificarse cuando el tribunal que la emitió haya perdido su jurisdicción continua y exclusiva sobre la orden, lo que ocurre de dos (2) formas: (1) cuando todas las partes han dejado de **residir** en el estado emisor, o (2) cuando todas

las partes han consentido por escrito a que un tribunal de otro estado modifique la orden. 8 L.P.R.A. secs. 542d(a), 547-547c; *Aponte v. Barbosa Dieppa, ante,* pág. 572.[15]

Así, auscultar el lugar de residencia de las **partes que figuran en la orden** sólo es pertinente para resolver si el tribunal que la emitió aún tiene jurisdicción continua y exclusiva **sobre la orden**. *Véase*, 8 L.P.R.A. sec. 542d; *Aponte v. Barbosa Dieppa, ante,* pág. 572. De haber cesado la jurisdicción, ello sólo supondría que la orden podría ser registrada en Puerto Rico para propósitos de ser modificada por un tribunal, puesto que hasta que ello no ocurra, la orden continúa vigente. 8 L.P.R.A. secs. 542d, 547-547c. No obstante, una vez un tribunal modifica una orden siguiendo el procedimiento establecido en la ley, adquiere jurisdicción continua y exclusiva sobre ésta, lo que privaría al antiguo tribunal de su jurisdicción para modificarla. 8 L.P.R.A. sec. 542d(c).

Nótese que al tratar la jurisdicción continua y exclusiva, la ley expresamente menciona que ésta recae sobre **la orden**. Ni de la sección 542d de nuestra ley, su versión en inglés, o del estatuto modelo se desprende que, una vez un tribunal posee jurisdicción continua y exclusiva

---

[15] Asimismo, a fines de disuadir de que varios estados emitan órdenes de alimentos en cuanto a las mismas partes, la ley provee un mecanismo para que la parte alimentista pueda solicitar que se reconozca y se haga cumplir una orden de alimentos en una jurisdicción distinta a la del tribunal que emitió inicialmente la orden. 8 L.P.R.A. sec. 545a.

sobre la orden, ello significa que ese tribunal retiene jurisdicción no sólo sobre la orden, sino para todo tipo de reclamación o fuente de alimentos que el menor tenga a su haber.

De igual forma, el estatuto guarda silencio sobre si la jurisdicción continua y exclusiva impide que un alimentista inste una reclamación con base en obligaciones distintas a las que emanan de la patria potestad o del matrimonio, y en contra de un alimentante sobre el cual no se ha impuesto obligación alguna en virtud de una orden. Debemos entonces analizar el principio de jurisdicción exclusiva, a la luz de los hechos particulares traídos ante nuestra consideración.

C

Al examinar los comentarios oficiales de la Comisión que redactó la U.I.F.S.A., puede constatarse que en todas las instancias en que el estatuto menciona la jurisdicción continua y exclusiva se indica que ésta se retiene sobre **la orden**. Por ejemplo, la ley provee que si un tribunal adquiere jurisdicción continua y exclusiva sobre **una orden**, ello impide que otros tribunales puedan modificar **la orden** y sus términos, a menos que el tribunal que la emitió haya perdido su jurisdicción sobre **la orden**.[16] Según se explica en el comentario del estatuto modelo:

> Hasta que alguna de las partes o el menor continúen residiendo en el estado que emite la orden, o hasta que las partes no establezcan un

---

[16] 8 L.P.R.A. secs. 541d, 547-547c.

acuerdo en contrario, el tribunal que emite la orden tiene jurisdicción continua y exclusiva sobre **su orden -lo que en términos prácticos significa que puede modificar su orden**.

Comentario, 9 U.L.A. sec. 205, pág. 340. (Énfasis suplido y traducción nuestra).

Asimismo, el estatuto **no establece** que el alcance de la jurisdicción continua y exclusiva se extiende a cualquier otro beneficio, deber u obligación existente bajo un ordenamiento, que pueda conllevar el establecimiento de una pensión alimentaria a favor del menor. Tampoco atiende los supuestos en que se trata de fijar una obligación de alimentar a un alimentante distinto al que figura en la orden emitida por el tribunal con jurisdicción continua y exclusiva. Y es que lo cierto es, como se demostrará, que el texto original de la U.I.F.S.A., adoptado íntegramente en nuestra legislación, no contempla este tipo de situaciones. No obstante, es menester indagar qué tipo de alcance se pretendió conferir a esta legislación y si la pensión impuesta en este caso por el Tribunal de Primera Instancia lo irrumpe o trastoca.

D

El examen legislativo de la L.I.U.A.P., en unión al historial del estatuto modelo, dejan en evidencia que la motivación principal de los cuerpos legislativos al aprobar la L.I.U.A.P. fue evitar dos situaciones: (1) que se emitieran múltiples órdenes de alimentos sobre **las mismas partes**, y (2) que un tribunal **modificara** una orden emitida por otro tribunal, restando uniformidad a los

procedimientos. Comentario, 9 U.L.A. sec. 201, pág. 329; Exposición de Motivos de la Ley Interestatal de Alimentos entre Parientes, 1997 Leyes de Puerto Rico, pág. 839.

Precisamente, tanto en la U.I.F.S.A. como en nuestra L.I.U.A.P. se establecieron unas guías transitorias para atender los casos dilucidados bajo estatutos anteriores, que como indicamos, permitían la existencia de múltiples órdenes en contra de las mismas partes. Así, de estar vigente más de una orden, la ley provee unas guías para establecer cuál es la orden controlante. No obstante, dicho procedimiento es aplicable sólo en situaciones en que "[hayan] sido emitidas dos o más órdenes de pensión alimentaria para menores por tribunales de Puerto Rico o de otro estado en relación **al mismo deudor alimentante y menor . . .".** 8 L.P.R.A. sec. 542f(b). Sin embargo, la ley nada provee en cuanto al supuesto en que se trate de órdenes separadas, cada una dirigida a un alimentante distinto.

Cabe entonces puntualizar que el hecho de que se emita más de una orden de alimentos, cada una dirigida a **alimentantes distintos,** no activa el procedimiento dispuesto en la referida sección 542f(b) a fines de determinar cuál de las órdenes es controlante. La razón lógica de que ello sea así es que trata de un procedimiento remedial y, la acción de fijar una segunda orden en contra de un **alimentante distinto,** al que se le impone una obligación por primera vez, no presenta el tipo de perjuicio que la U.I.F.S.A. pretendió erradicar,

entiéndase, la existencia de múltiples órdenes en relación al **mismo alimentante y alimentista**. Cabe entonces colegir que la L.I.U.A.P., y el principio de *una sola orden* allí adoptado, no proscriben, ni son incompatibles, con la acción de dictar una orden de alimentos en contra de un alimentante distinto al que figura en una orden previa emitida por otro tribunal y contra quien **no se ha emitido orden alguna**.

E

Por otro lado, al analizar minuciosamente el historial legislativo y el texto de la U.I.F.S.A., adoptada íntegramente en nuestra L.I.U.A.P., puede notarse que se trata de un estatuto modelo aplicable únicamente a dos tipos de obligaciones de alimentos: (1) la obligación de alimentar a los hijos que emana de la paternidad o maternidad y (2) la obligación recíproca de brindarse alimentos que corresponde a los cónyuges. Varios factores abonan a esta interpretación. Veamos.

En primer lugar, en los países de *common law*, como Estados Unidos, la obligación de aquellos llamados a alimentar corresponde a los esposos entre sí y a los padres respecto a sus hijos. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, San Juan, Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 2002, págs. 1448-49. Más allá de lo anterior, el deber de alimentar no se extiende a

otros parientes, tales como los abuelos.[17]  En el ámbito estatutario, a modo de excepción, podemos mencionar la legislación del estado de Luisiana, que como la nuestra, extiende la obligación de alimentar a un menor a otros parientes, incluyendo los abuelos.  *Véanse*, Art. 229 del Código Civil de Luisiana, La. Civ. Code Art. 229;  Art. 143 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 562; Serrano Geyls, *op cit.*, págs. 1448-49.  Ahora bien, como regla general, el ordenamiento estadounidense no establece la obligación de los abuelos de proveer alimentos a sus nietos en situaciones en que los padres biológicos sean incapaces de cumplir con su obligación.[18]

El hecho de que en el *common law* la obligación de alimentar no se extiende a los ascendientes más allá del padre y la madre, abona a la conclusión de que al redactar la U.I.F.S.A., no se pudo haber tomado en consideración la existencia de otros deberes de alimentar que no fuesen aquéllos originados por la paternidad o en el matrimonio. Lo anterior, en unión a las omisiones señaladas

---

[17] Algunos estados han aprobado estatutos para imponer a los hijos mayores de edad el deber de alimentar a sus padres en caso de necesidad. *Véase*, U. Narayan, *The Government's Role in Fostering the Relationship Between Adult Children and their Elder Parents: From Filial Responsibility Laws to . . . What?, A Cross-Cultural Perspective*, 4 Elder L.J. 369 (1996).

[18] Cabe mencionar que algunos estados han aprobado legislación para reconocer el deber de los abuelos de brindar alimentos a sus nietos en casos en que los padres biológicos son menores de edad, e incapaces de cumplir con su obligación. *Véase*, Laura W. Morgan, *Doing it again: grandparents paying child support*, 35 TRIAL 37 (1999).

anteriormente, confirma que la U.I.F.S.A. no fue diseñada con el propósito de regir otras fuentes de obligación de alimentar que puedan existir a favor de un menor, separada de la que emana de su relación con sus padres.[19]

Por ello, llama la atención que la Opinión mayoritaria señale que los redactores de la U.I.F.S.A. incluyeron una definición amplia del término *alimentante,* dejando entrever que ello se hizo con el propósito de que el estatuto aplicara a la obligación de los abuelos con sus nietos. Esta interpretación no sólo proviene de un equívoco, sino que no halla base alguna en el texto del estatuto ni en su historial.

Nuestra L.I.U.A.P. define el término alimentante de la siguiente forma:

> (a) *Deudor o alimentante.* — Significa la persona o el caudal hereditario de un causante, **que debe o se alega que debe** la obligación de prestar alimentos;
> (b) **que se alega** es el padre, pero respecto al cual **no ha sido determinada la filiación** del menor, o
> (c) **que es responsable** de satisfacer **una orden** de pensión alimentaria.

8 L.P.R.A. sec. 541(13)(Énfasis nuestro).[20]

---

[19] Precisamente, la razón fundamental para reemplazar uno de los estatutos modelos que precedieron a la U.I.F.S.A. fue que establecía obligaciones alimentarias que no existían en el ordenamiento estadounidense, tales como el deber de alimentar a los parientes en necesidad. T.M. Fielding, *The Uniform Interstate Family Support Act: The New URESA*, 20 Dayton L. Rev. 425, 429 (1994)

[20] En su versión en inglés, la L.I.U.A.P. define al alimentante de la siguiente forma:
*Obligor.*— Means an individual, or the state of a decedent:

(continúa...)

Ciertamente, el citado precepto define el término *alimentante* en términos amplios, pero no puede sugerirse, con seriedad académica, que ello extiende la aplicación del estatuto para que aplique a cualquier tipo de obligación de dar alimentos, más allá de las que ostentan los padres y los cónyuges.

De una lectura serena de la citada definición se desprende que su amplitud obedece a la intención de los redactores de la U.I.F.S.A. de que el término aplicase en cualquier etapa de los procedimientos, no sólo en casos en que la obligación ha sido previamente establecida, sino también en situaciones en que se alega que un padre o cónyuge tienen la obligación de alimentar, aunque la filiación o la obligación del cónyuge no haya sido fijada por un tribunal. *Véase*, Comentario, 9 U.L.A. sec. 101, pág. 310.

Abona a lo anterior que en los comentarios oficiales al texto original de la U.I.F.S.A. se indica expresamente que **el estatuto no es aplicable a procedimientos para hacer valer otros deberes estatutarios de alimentar, ya sea entre otras personas o parientes, tales como el deber de un hijo adulto de sustentar a sus padres.** *Véase*, Nota Prologal, 9 U.L.A., pág.286. ("The Act may be used only for proceedings

---

        (a) Who owes or is alleged to owe a duty of
support;
        (b) who is alleged but has not been
adjudicated to be a parent of a child, or
        (c) who is liable under a support order.

Leyes de Puerto Rico, 1997, pág. 870.

involving the support of a child or spouse of the support obligor, and not to enforce other duties such as support of a parent."). *Véase*, *además*, S. Torres Peralta, *La Ley de Sustento de Menores y el derecho alimentario en Puerto Rico*, Publicaciones STP, Inc., San Juan, 2007, T.2, pág. 17.11. Consecuentemente, la obligación legal de alimentos impuesta a los abuelos que emana de nuestro Código Civil es un deber estatutario que no forma parte del ámbito de aplicación de la U.I.F.S.A. **Del mismo modo, es forzoso colegir que las limitaciones jurisdiccionales del referido estatuto tampoco son aplicables a un procedimiento en el que un nieto reclama alimentos a su abuelo y ambos residen en Puerto Rico.**

### III

La Opinión mayoritaria razona que una vez un tribunal posee jurisdicción continua y exclusiva sobre la orden, la ley del estado en el que está sito el tribunal rige "todo lo relativo a la naturaleza y alcance del deber de alimentar". Como consecuencia, se adelanta a concluir que no procede aplicar las disposiciones de nuestro Código Civil que reglamentan el deber de alimentos entre parientes, y que amparan la posibilidad de que un abuelo deba responder por la necesidad alimentaria de su nieto. Es decir, que nuestra ley, que a todas luces provee una mayor protección, quedaría desplazada de probarse la existencia de una orden de alimentos en contra de los padres biológicos del menor J.S.B.L. Para fundamentar su

posición, la ponencia mayoritaria reproduce la sección 545c

de nuestra L.I.U.A.P., la cual lee:

> (a) La ley del estado que emite la orden es la ley que rige la naturaleza, alcance, cantidad y duración de los pagos corrientes y otras obligaciones relacionadas con el deber de alimentar y el pago de las sumas adeudadas **bajo dicha orden**.

8 L.P.R.A. sec. 545c. (Énfasis suplido).

El Tribunal concluye que esta sección de la ley priva a un

tribunal de otro estado de su autoridad para reconocer

otros deberes o remedios independientes o de distinta

naturaleza. No obstante, la falla del razonamiento de la

mayoría es que pasa por alto que la sección 545c es

inaplicable a los hechos de este caso.

La sección 545c forma parte del procedimiento

establecido en la ley para casos en que una parte solicita

que se registre y ejecute una orden de alimentos en un

estado distinto al que la emitió. 8 L.P.R.A. sec. 545(c).

Ello únicamente implica que una vez se utiliza ese

procedimiento, las obligaciones establecidas **en la orden**

deberán regirse por el derecho sustantivo del estado en que

se emitió la orden. *Véanse*, *Id.*; Comentario, 9 U.L.A. sec.

604, págs. 427-28.

Así pues, el marco de aplicación de la sección 545c se

limita al procedimiento de registro para ejecución, más

ésta no es óbice para que se inste una reclamación como la

del presente caso, en el que por primera vez se solicita

que se establezca la obligación de un alimentante.

Ya examinados los preceptos de nuestro estatuto interestatal de alimentos, sólo resta aplicarlos fielmente a los hechos ante nuestra consideración.

IV

El caso de autos versa sobre una reclamación de alimentos presentada por el menor J.S.B.L. en contra de su abuelo, el señor Bengoa Becerra, instada al amparo del deber de alimentos entre parientes instaurado en nuestro ordenamiento, el cual establece la obligación subsidiaria de los abuelos de alimentar a sus nietos. Artículo 143 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 562. ; *Vega v. Vega*, 85 D.P.R. 675 (1962); *Piñero Crespo v. Gorgillo Gil*, 122 D.P.R. 246 (1988); S. Torres Peralta, *op. cit.*, págs. 5.60-5.69.

Al examinar el texto de la demanda presentada por el matrimonio Moreno-Solá ante el Tribunal de Primera Instancia, observamos que la parte alimentista únicamente solicitó del tribunal que ordenara al señor Bengoa Becerra que aportara económicamente para la manutención de su nieto. Siguiendo el procedimiento dispuesto en la ley y en nuestra jurisprudencia al respecto y, a la luz de la prueba admitida, el tribunal fijó una pensión provisional para el menor.

El matrimonio Moreno-Solá no solicitó que se estableciera una segunda orden de alimentos en cuanto al mismo alimentante, por lo que **no cabe decir que se intenta establecer una segunda orden sobre las mismas partes objeto**

**de la supuesta orden de alimentos emitida por la Corte de Florida.**[21] Lo que es más patente aún, no solicitó que se modificaran o alteraran los términos, el alcance o la cuantía de la referida orden. Es decir, no estamos ante la posibilidad de que ocurra alguna de las situaciones que propiciaron la aprobación, no sólo de la U.I.F.S.A., sino de los estatutos interestatales de alimentos en general.

En este caso, tanto el alimentante como el alimentista residen en Puerto Rico y no surge del expediente que se haya dictado orden alguna en la que se haya ordenado al peticionario a cumplir con alguna pensión alimentaria. Dicho esto, nos encontramos ante una reclamación de alimentos puramente doméstica, en la que las partes alimentante y alimentista residen en Puerto Rico. *Véase*, S. Torres Peralta, *op. cit.*, págs. 17.23-17.24. Es decir, las limitaciones jurisdiccionales establecidas en la L.I.U.A.P. no aplican a los hechos de este caso, por lo que nuestros tribunales tienen autoridad para atender la reclamación instada en contra del señor Bengoa Becerra.[22]

---

[21] Demanda, pág. 15 del Apéndice, Petición de *certiorari*.

[22] Es por esto que es errada la decisión de la mayoría al devolver el caso al foro de primera instancia para que se esclarezca si la Corte de Florida perdió su jurisdicción por una de las razones establecidas en la referida ley.
Porque sostengo que nuestros tribunales tienen jurisdicción para entender en la reclamación instada en el presente caso, procedía considerar el segundo y tercer señalamiento de error traídos por el peticionario. Éstos van dirigidos, en esencia, a cuestionar la naturaleza y cuantía de la pensión alimentaria para el menor fijada por el foro primario a la luz de la prueba admitida.

(continúa...)

En ausencia de una expresión legislativa en contrario, en el caso de autos no existe una razón de peso para renunciar a nuestra jurisdicción en una porción mayor a lo exigido por ley, máxime si ello conlleva que se arrebate a un menor los mecanismos adicionales y de mayor protección que provee nuestro ordenamiento para que éste reciba los alimentos de los cuales se ha visto privado. Es por lo tanto sumamente lamentable el curso de acción mayoritario, el cual tiene el efecto real de perjudicar a un menor al impedirle que pueda reclamar alimentos de sus abuelos conforme establece el ordenamiento puertorriqueño.

Por las razones que discuto, disiento del razonamiento y del desafortunado resultado al que arriba la Opinión mayoritaria.

Anabelle Rodríguez Rodríguez
Juez Asociada

---

No obstante, el peticionario no incluyó una transcripción o resumen de la prueba, por lo que no nos colocó en posición de pasar juicio sobre las determinaciones del Tribunal de Primera Instancia basadas en la prueba vertida ante sí. *Véanse*, *Álvarez de Choudens v. Rivera Vázquez,* 165 D.P.R. 1, 13 (2005); *Pueblo v. Acevedo Estrada*, 150 D.P.R. 84 (2000); *Rolón v. Charlie Car Rental, Inc.,* 148 D.P.R. 420 (1999).