ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **FRANKLIN CREDIT MANAGEMENT CORPORATION COMO AGENTE DE WILMINGTON SAVINGS FUND SOCIETY FSB, SOLELY AS CERTIFICATE TRUSTEE OF BOSCO CREDIT II TRUST SERIES 2017-1** DEMANDANTE(S)-RECURRIDA(S) <br><br> V. <br><br> **JORGE JOSÉ ROSA MIRANDA Y OTROS** DEMANDADA(S)-PETICIONARIA(S) | **KLAN202500388** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **MANATÍ** <br><br> Caso Núm. **MT2019CV00849 (102)** <br><br> Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Álvarez Esnard.[1]

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 23 de junio de 2025.

Comparece ante nos, el señor **JORGE JOSÉ ROSA MIRANDA** (señor **ROSA MIRANDA**) mediante *Certiorari* instada el 31 de marzo de 2025. En su recurso, nos solicita que revisemos la *Sentencia Nunc Pro Tunc* emitida el 22 de enero de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de Manatí.[2] Mediante la referida determinación, el tribunal primario enmendó para incluir el desglose de las partidas y remedios concedidos en la *Sentencia* dictada el 10 de enero de 2025 [Entrada 158 SUMAC] la cual declaró ha lugar la *Demanda* entablada el 9 de octubre de 2019, así como la *Solicitud de Sentencia Sumaria* presentada el 6 de julio de 2021 por **FRANKLIN CREDIT**

---

[1] En conformidad con la *Orden Administrativa OATA-2025-047* decretada el 4 de abril de 2025, la Jueza Álvarez Esnard está en sustitución de la Jueza Rivera Pérez quien cesó de ejercer funciones en el Tribunal de Apelaciones.
[2] Dicho dictamen judicial fue notificado y archivado en autos el 27 de enero de 2025. Apéndice de la *Apelación*, págs. 357- 368.

MANAGEMENT CORPORATION COMO AGENTE DE WILMINGTON SAVINGS FUND SOCIETY FSB, SOLELY AS CERTIFICATE TRUSTEE OF BOSCO CREDIT II TRUST SERIES 2017-1 (FCMC).[3]

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 12 de diciembre de 2003, el señor ROSA MIRANDA otorgó un pagaré a favor de Doral Mortgage Corp. o a su orden, por la suma principal de $164,080.00 más intereses desde la fecha en que suscribió hasta el pago total del principal, a razón de 5.25% de interés anual sobre el balance adeudado.

Posteriormente, el 9 de octubre de 2019, **FCMC** interpuso una *Demanda* sobre cobro de dinero y ejecución de hipoteca contra el señor ROSA MIRANDA.[4] En esta, adujo que el último pago efectuado por el señor ROSA MIRANDA fue para el 1 de enero de 2016, por lo que incumplió con su obligación de pagar en plazos mensuales el principal y los intereses, según lo acordado. **FCMC** planteó que es el actual tenedor del pagaré hipotecario objeto de la controversia suscitada entre las partes. El 10 de octubre de 2019, se decretó una *Orden* mediante la cual se le requirió proveer cierta documentación a **FCMC**.[5]

Después, el 3 de febrero de 2020, las partes fueron referidas al CENTRO DE MEDIACIÓN Y CONFLICTOS EN CASOS DE EJECUCIÓN DE HIPOTECAS (**CMC**), por lo que, los procedimientos fueron paralizados.

El 26 de mayo de 2021, el **CMC** presentó *Moción Informativa en Casos de Ejecución de Hipoteca Mediante Videoconferencia* acompañada de

---

[3] Apéndice de la *Apelación*, págs. 346- 356.
[4] *Íd.*, págs. 1-5.
[5] *Íd.*, pág. 6. Se requirió suministrar los siguientes documentos: certificación registral de la finca objeto de esta acción; copia del requerimiento de pago al deudor; copia de los documentos que evidencian la obligación que se reclama, incluyendo copia de pagaré y de la escritura de hipoteca; declaración jurada del acreedor o persona autorizada por éste que acredite el balance reclamado y, que incluya la declaración de que se está en posesión del pagaré al momento de iniciarse la acción, así como que la copia del pagaré que ha sido presentada es una copia fiel y exacta del original; y además, el acreedor bajo juramento deberá acreditar que se ha cumplido con el Artículo 4 de la Ley 184- 2012, según enmendada, al momento de concederse el préstamo objeto de esta acción, de aplicar al presente caso. Ello dentro del período de sesenta (60) días.

*Notificación del Tribunal en Casos de Ejecución de Hipoteca Mediante Videoconferencia*.[6] En la cual informó: "***Sin Acuerdo****: Ambas partes participaron de la sesión obligatoria de medicación mediante videoconferencia pero no lograron acuerdos.*"

El día 25 de junio de 2021, el señor **ROSA MIRANDA** presentó una *Moción de Desestimación*.[7] Alegó, entre otras cosas, que no se le ofrecieron todas las alternativas para evitar una ejecución de hipoteca.

Más tarde, el 6 de julio de 2021, **FCMC** presentó una *Solicitud de Sentencia Sumaria*.[8] Manifestó que la deuda en controversia se encontraba vencida, líquida y exigible; y habían cumplido cabalmente con la Ley 184 2012, en consecuencia, interpeló se declarara ha lugar su petitorio. Destacó que el inmueble objeto de la reclamación no era la residencia principal del señor **ROSA MIRANDA**. Ese mismo día, **FCMC** presentó *Oposición a "Moción de Desestimación"*.[9] Aseveró que la Ley 184-2012 no es de aplicación al caso por no ser la residencial principal del señor **ROSA MIRANDA.** Empero, ante el **CMC,** se informó las alternativas disponibles, la información y documentación necesaria, así como, se pactó fecha de entrega con la representación legal del señor **ROSA MIRANDA**.

El 8 de septiembre de 2021, el señor **ROSA MIRANDA** presentó su *Oposición a Solicitud de Sentencia Sumaria*.[10] Al poco tiempo, el 12 de octubre de 2021, el señor **ROSA MIRANDA** presentó una *Contestación a Demanda y Reconvención*.[11] Arguyó, entre otras cosas, que realizó los pagos mensualmente, por quince (15) años ininterrumpidamente, y cuestionó la razón por la cual **FCMC** no le aceptaba los pagos de la deuda. En respuesta, el 23 de junio de 2022, **FCMC** presentó *Réplica a Reconvención*.[12]

---

[6] Apéndice de la *Apelación*, págs. 7- 8.
[7] *Íd*., págs. 9- 13. Debemos puntualizar que su comparecencia ha sido mediante los licenciados Gierbolini Bonilla y Saxton-Arroyo.
[8] Apéndice de la *Apelación*, págs. 14- 146.
[9] *Íd*., págs. 147- 153.
[10] *Íd*., págs. 154- 174.
[11] *Íd*., págs. 177- 197.
[12] Apéndice de la *Apelación*, págs. 198- 211.

Así las cosas, el 1 de septiembre de 2023, se dictaminó *Sentencia Sumaria*.[13] Concretó que el señor ROSA MIRANDA debía pagar la cantidad de $126,431.55 por concepto del principal, más intereses al tipo pactado de 5.25% anual desde el 1 de enero de 2016 a favor de **FCMC**. Además, la suma de $16,408.00 equivalente al 10% del principal original, para costas, gastos y honorarios de abogados. Asimismo, ante la eventualidad de que el señor ROSA MIRANDA no cumpliera con los pagos, se ordenaría la venta en pública subasta de la propiedad inmueble hipotecada para aplicar el importe de la venta al saldo de la deuda.

Ulteriormente, el 12 de noviembre de 2024, **FCMC** presentó *Solicitud de Sentencia Enmendada* para incluir la desestimación de la reconvención del señor ROSA MIRANDA.[14] El 13 de noviembre de 2024, se expidió *Orden* declarando ha lugar la solicitación de sentencia enmendada y requiriendo proveer un proyecto de sentencia.[15] Al día siguiente, el 14 de noviembre de 2024, el señor ROSA MIRANDA presentó *Urgente Moción de Reconsideración*.[16] Prontamente, el 24 de noviembre de 2024, el señor ROSA MIRANDA presentó *Reconsideración y Oposición a que se Presente Proyecto de Sentencia Enmendada*.[17]

Poco después, el 2 de enero de 2025, **FCMC** presentó *Moción en Cumplimiento de Órdenes*.[18] Elucidó que el señor ROSA MIRANDA no se opuso adecuadamente a la *Solicitud de Sentencia Sumaria*; incumplió con la Regla 36 de las de Procedimiento Civil de 2009; no controvirtió ninguno de los hechos; y no presentó evidencia alguna concerniente al pago de la deuda.

En estas circunstancias, el 10 de enero de 2025, se determinó *Sentencia*.[19] Finalmente, el 22 de enero de 2025, se dispuso la *Sentencia Nunc Pro Tunc* apelada. En desacuerdo, el 30 de enero de 2025, el señor ROSA

---

[13] *Íd.*, págs. 213- 223.
[14] *Íd.*, págs. 225- 226.
[15] Apéndice de la *Apelación*, pág. 227.
[16] *Íd.*, págs. 228- 254.
[17] *Íd.*, págs. 256- 257.
[18] *Íd.*, págs. 278- 344.
[19] Apéndice de la *Apelación*, págs. 346- 356.

**MIRANDA** presentó *Moción de Reconsideración*.[20] A consecuencia, el 19 de febrero de 2025, se decidió *Resolución Interlocutoria* denegando dicha petición.[21]

Aún inconforme, el 31 de marzo de 2025, el señor **ROSA MIRANDA** acudió ante este foro revisor intermedio mediante *Certiorari* señalando el(los) siguiente(s) error(es):

Erró y abusó de su discreción el foro de instancia al dictar Sentencia en el caso de epígrafe, mediante la cual avaló las alegaciones de la Demanda de este caso y la solicitud de sentencia sumaria de la parte recurrida, cuando el expediente de este caso revela la existencia de hechos materiales sustanciales controvertidos que derrotan dichas alegaciones y solicitud de sentencia sumaria.

Erró y abusó de su discreción el foro de instancia al dictar Sentencia Nunc Pro Tunc en este caso para desglosar unas partidas y remedios de su sentencia, cuando dichos propósitos no se canalizan a través del mecanismo nunc pro tunc.

Erró y abusó de su discreción el foro de instancia al insistir en sus sentencias recurridas que la parte recurrente no cumplió con las disposiciones del ordenamiento jurídico con relación a una oposición a sentencia sumaria, cuando el expediente de este caso revela ausencia de prueba sobre el ofrecimiento de la parte recurrida a la parte recurrente de todas las alternativas de mitigación de pérdidas, sobre la legitimidad de buena fe del pagaré de este caso por la parte recurrida, sobre el manejo adecuado de la parte recurrida de las solicitudes de mitigación de pérdidas de la parte recurrente.

Erró y abusó de su discreción el foro de instancia al expresar en sus sentencias que la parte recurrente no vive en Puerto Rico, cuando el asunto de la residencia y el domicilio fue dejado sin efecto por el propio Foro de Instancia en el 2019.

El 9 de abril de 2025, intimamos *Resolución* requiriendo acreditar la notificación del recurso a **FCMC,** así como al tribunal primario; y concediendo el término de diez (10) días para mostrar causa por la cual no debíamos expedir el recurso a **FCMC**. El 21 de abril de 2025, **FCMC** presentó su *Alegato en Oposició*n. En esa misma fecha, el señor **ROSA MIRANDA** presentó *Moción en Cumplimiento de Resolución*. El 24 de abril de 2025, **FCMC** presentó una *Moción de Desestimación por Falta de Jurisdicción* dilucidó que el señor **ROSA MIRANDA** "ha hecho admisión de incumplimiento

---

[20] *Íd*., págs. 369- 390.
[21] *Íd*., págs. 397- 398.

con el término de cumplimiento estricto de notificación al Tribunal de Primera Instancia sin acreditar razones de justa causa para ello". Entonces, el 25 de abril de 2025, pronunciamos *Resolución* acogiendo este recurso como una apelación y se ordenó el cambio de materia para propósitos administrativos. Más tarde, el 29 de abril de 2025, suscribimos *Resolución* confiriendo un plazo de diez (10) días para exponer posición sobre la solicitud de desestimación. El 15 de mayo de 2025, el señor **ROSA MIRANDA** presentó *Oposición a Moción de Desestimación* argumentó que: "si acreditó con justa causa el porqué de la presentación tardía de su Moción Informando Presentación de Recurso ante el Foro Apelativo...[...] una Moción Informando Presentación de Recurso es de cumplimiento estricto, no jurisdiccional y, por lo tanto, la presentación tardía de dicho documento no conlleva consecuencias fatales, extintivas...[...] el Poder General de Justicia debe cuestionarse porque insiste en mantener vigente los requisitos de notificación de Recursos de Apelación o Certiorari a los Foros Judiciales recurridos o apelados, cuando estos últimos eventualmente reciben notificaciones oficiales que dan cuenta de la existencia de dichos recursos...[...] *el abogado recurrente se hallaba preparando escritos de naturaleza jurisdiccional y otros que ameritaban premura y también dio cuenta de su condición de salud*. Ello es constitutivo de justa causa.".

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II –

- A - **Perfeccionamiento de los Recursos ante el Tribunal de Apelaciones**

Nuestro ordenamiento jurídico reconoce a todo ciudadano el derecho estatutario a recurrir de las decisiones de un organismo inferior.[22] Empero,

---

[22] *Isleta v. Inversiones Isleta Marina,* 203 DPR 585, 590 (2019).

este derecho está sujeto a las limitaciones legales y reglamentarias pertinentes, entre ellas, su correcto perfeccionamiento. Los requisitos aplicables sobre el perfeccionamiento de un recurso de apelación o discrecional están contenidos en el Reglamento del Tribunal de Apelaciones de 2004; la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, según enmendada; y en las Reglas de Procedimiento Civil de 2009, según enmendadas. Nuestro Tribunal Supremo ha establecido que las reglas en cuanto al perfeccionamiento de los recursos apelativos deben cumplirse rigurosamente y, claro está, su cumplimiento no puede estar al árbitro de las partes o sus abogados.[23] Ello a los fines de que los tribunales revisores estén en posición de ejercer adecuadamente su función, toda vez que el incumplimiento de dichos mandatos impide tener un expediente completo y claro para delimitar la controversia ante su consideración.[24]

Si no se perfecciona un recurso dentro del término *jurisdiccional* o de *cumplimiento estricto* provisto para ello, el foro apelativo no adquiere jurisdicción para entender en el recurso presentado. Por ende, el incumplimiento con los requerimientos establecidos en el Reglamento de un tribunal apelativo puede servir de fundamento para la desestimación del recurso.[25]

Más aún, el Alto Foro expresó que como regla general se suele desestimar recursos por tener apéndices incompletos cuando esa omisión no permite penetrar en la controversia o constatar la *jurisdicción* del tribunal.[26] Señaló que la política de acceso a la justicia contenida en la Ley de la Judicatura de 2003, no es sinónimo de anarquía, permitiendo el incumplimiento rutinario con las Reglas de Procedimiento Civil de 2009 y los Reglamentos de los tribunales.[27] Ciertamente, la Ley de la Judicatura de 2003 tuvo como uno de sus propósitos hacer más accesible la justicia apelativa a la

---

[23] *Freire Ruiz de Val y Otros v Morales Román*, 2024 TSPR 129, 214 DPR ___.
[24] *Id.*
[25] *Montañez Leduc v. Robinson Santana*, 198 DPR 543, 549- 550 (2017); *Morán v. Martí,* 165 DPR 356 (2005).
[26] *Vázquez Figueroa v. E.L.A.*, 172 DPR 150 (2007).
[27] 4 LPRA § 24a. *Morán v. Martí, supra; Gran Vista I v. Gutiérrez y otros*, 170 DPR 174 (2007).

ciudadanía, flexibilizando los procesos apelativos, sin embargo, ello no

supuso dar al traste con los **requisitos mínimos exigidos** para atender

ordenadamente los recursos que se presentan ni mucho menos pretendió

eliminar los términos jurisdiccionales. "Actuar en contravención de ello, es

no apurar adecuadamente cual fue el verdadero alcance de la Ley de la

Judicatura de 2003."[28]

Además de lo anterior, la Regla 13 (B) de nuestro Reglamento dispone

todo lo relacionado a la notificación del recurso a las partes. A esos efectos,

la citada Regla, en lo pertinente, instituye lo siguiente:

> (B) Notificación a las partes
> (1) Cuándo se hará
> La parte apelante notificará el recurso apelativo y los Apéndices dentro del término dispuesto para la presentación del recurso, siendo éste un término de *estricto cumplimiento*.
> La parte apelante deberá certificar con su firma en el recurso, por sí o por conducto de su representación legal, la fecha en que se efectuó la notificación. Esta norma es aplicable a todos los recursos.
> (2) Cómo se hará
> La parte apelante notificará el recurso de apelación debidamente sellado con la fecha y hora de su presentación mediante correo certificado o servicio de entrega por empresa privada con acuse de recibo. Podrá, además, utilizar los siguientes métodos sujeto a lo dispuesto en estas reglas: correo ordinario, entrega personal, telefax o correo electrónico, siempre que el documento notificado sea copia fiel y exacta del documento original.
> La notificación por correo se remitirá a los abogados o abogadas de las partes, o a las partes cuando no estuvieren representadas por abogado o abogada, a la dirección postal que surja del último escrito que conste en el expediente del caso. Cuando del expediente no surja una dirección y la parte estuviere representada por abogado o abogada, la notificación se hará a la dirección que de éste o ésta surja del registro que a esos efectos lleve el Secretario o Secretaria del Tribunal Supremo.
> La notificación por entrega personal se hará poniendo el documento en las manos de los abogados o abogadas que representen a las partes, en las de la parte, según sea el caso, o entregarse en la oficina de los abogados o las abogadas a cualquier persona a cargo de la misma. De no estar la parte o las partes representadas por abogado o abogada, la entrega se hará en el domicilio o a la dirección de la parte o las partes según surja de los autos, o a cualquier persona de edad responsable que se encuentre en la misma.
> La notificación mediante telefax deberá hacerse al número correspondiente de los abogados o las abogadas que representen a las partes o al de las partes, de no estar representadas por abogado o abogada, cuando las partes a ser notificadas hubieren provisto tal número al tribunal y así surja de los autos del caso ante el Tribunal de Primera Instancia.

---

[28] *Morán v. Martí, supra,* pág. 369.

La notificación mediante correo electrónico deberá hacerse a la dirección electrónica correspondiente de los abogados o abogadas que representen a las partes o al de las partes, de no estar representadas por abogado o abogada, cuando las partes a ser notificadas hubieren provisto al tribunal una dirección electrónica y así surja de los autos del caso ante el Tribunal de Primera Instancia.

(3) Constancia de la notificación [...].

Por otro lado, la Regla 14 (B) del Reglamento del Tribunal de Apelaciones instaura todo lo relacionado a la presentación y notificación del recurso ante el Tribunal de Apelaciones o el Tribunal de Primera Instancia. En específico, esta Regla expresa:

Regla 14 — Presentación y notificación
(A) La apelación se formalizará presentando el original del escrito de apelación y tres copias en la Secretaría del Tribunal de Apelaciones o en la Secretaría del Tribunal de Primera Instancia que dictó la sentencia apelada.
(B) De presentarse el original del recurso de apelación en la Secretaría del Tribunal de Apelaciones junto con el arancel correspondiente, la parte apelante deberá notificar la cubierta o primera página del escrito de apelación, debidamente sellada con la fecha y hora de presentación, a la Secretaría de la sede del Tribunal de Primera Instancia que haya dictado la sentencia apelada, dentro de las setenta y dos horas siguientes a la presentación del escrito de apelación. Este término será de *cumplimiento estricto*. [...].

Como parte de los requisitos para perfeccionar un recurso de apelación está la **presentación** oportuna ante la Secretaría del Tribunal de Apelaciones o Tribunal de Primera Instancia, y su **notificación** a las partes; ambos inciden en la jurisdicción del tribunal.[29] El requisito de la notificación se ha incorporado a la práctica legal con el objetivo de salvaguardar el debido proceso de ley de las partes ante la presentación de un recurso apelativo.[30]

Es norma harta conocida en nuestro ordenamiento que un término de *cumplimiento estricto* puede ser prorrogado por los tribunales.[31] Para prorrogar un término de *cumplimiento estricto* "generalmente se requiere que la parte que solicita la prórroga, o que actúa fuera del término, presente justa causa por la cual no puede cumplir con el término establecido".[32] En

---

[29] *Freire Ruiz de Val y Otros v Morales Román, supra.*
[30] *Freire Ruiz de Val y Otros v Morales Román, supra.*
[31] *Soto Pino v. Uno Radio Group,* 189 DPR 84 (2013).
[32] *Freire Ruiz de Val y Otros v Morales Román, supra; Soto Pino v. Uno Radio Group, supra,* pág. 92.

consecuencia, si no lo hace, los tribunales "carece[n] de discreción para prorrogar el término y, por ende, acoger el recurso ante su consideración".[33] El Máximo Foro ha reiterado que la justa causa se acredita mediante explicaciones "concretas y particulares, - debidamente evidenciadas en el escrito- que le permitan al tribunal concluir que hubo una excusa razonable para la tardanza o la demora".[34] Por ese motivo, "no es con vaguedades, excusas o planteamientos estereotipados que se cumple con el requisito de justa causa, sino con explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales".[35]

Como resultado, un tribunal podrá eximir a una parte de observar el cumplimiento con un término de cumplimiento estricto únicamente si concurren estas condiciones: (1) que en efecto exista justa causa para la dilación y (2) que la parte le demuestre detalladamente al tribunal las bases razonables que tiene para la dilación, es decir, que acredite de manera adecuada la justa causa aludida.[36]

### - B - Jurisdicción

La *jurisdicción* es el poder o autoridad de un tribunal para considerar y decidir casos y controversias.[37] Debido a lo cual, la falta de *jurisdicción* de un tribunal incide directamente sobre su poder para adjudicar una controversia.[38]

Los tribunales deben ser celosos guardianes de su *jurisdicción*. Aun en ausencia de un señalamiento por alguna de las partes, la falta de *jurisdicción* puede ser considerada *motu proprio* por los tribunales. Las cuestiones de *jurisdicción* por ser privilegiadas deben ser resueltas con preferencia. En definitiva, si un tribunal determina que carece de *jurisdicción*, lo único que

---

[33] *Soto Pino v. Uno Radio Group, supra.*
[34] *Rivera Marcucci et al. v. Suiza Dairy*, 196 DPR 157 (2016).
[35] *Freire Ruiz de Val y Otros v Morales Román, supra*; *García Ramis v. Serrallés*, 171 DPR 250, 253 (2007).
[36] *Rivera Marcucci et al. v. Suiza Dairy, supra,* pág. 171.
[37] *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374 (2020); *Beltrán Cintrón, et al. v. ELA, et al.*, 204 DPR 89 (2020).
[38] *Allied Mgmt. Group v. Oriental Bank, supra.*

puede hacer es así declararlo y proceder con la inmediata desestimación del caso.[39]

El Tribunal Supremo ha resuelto enfáticamente que la ausencia de *jurisdicción* trae consigo las siguientes consecuencias: *"(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso; y (6) puede presentarse en cualquier etapa de los procedimientos, a instancia de las partes o por el tribunal motu proprio"*.[40]

A esos efectos, la Regla 83 (C) del Reglamento del Tribunal de Apelaciones consigna nuestra faculta para que, a iniciativa propia, se desestime un recurso de apelación o deniegue un auto discrecional por cualquiera de los motivos consignados en el inciso (B).[41] Una vez un tribunal determina que no tiene *jurisdicción*, *"procede la inmediata desestimación del recurso apelativo conforme lo ordenado por las leyes y los reglamentos para el perfeccionamiento de estos recursos"*.[42] Ello sin entrar en los méritos de la controversia ante sí.

## - III –

En este caso, tras examinar suspicazmente la totalidad del expediente judicial, hacemos constar que, justamente, existe un asunto de índole jurisdiccional.

---

[39] *JMG Investment v ELA et al.*, 203 DPR 708, 714 (2019); *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 499- 500 (2019).
[40] *Beltrán Cintrón, et al. v. ELA, et al.*, *supra*; *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011); y *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).
[41] Dicho inciso lee: *"(B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes: (1) que el Tribunal de Apelaciones carece de jurisdicción; (2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello; (3) que no se ha presentado o proseguido con diligencia o de buena fe; (4) que el recurso es frívolo y surge claramente que ha sido interpuesto para demorar los procedimientos; o (5) que el recurso se ha convertido en académico".*
[42] *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 883 (2007).

Ciertamente, se desprende que: el 31 de marzo de 2025, el señor **ROSA MIRANDA** incoó el *Certiorari,* acogido como *Apelación,* ante este Tribunal de Apelaciones. El 21 de abril de 2025, en su *Moción en Cumplimiento con Resolución*, el señor **ROSA MIRANDA** acreditó que: (i) el 31 de marzo de 2025, "notificó oportunamente las copias selladas con su fecha y hora de presentación en este Honorable Tribunal de su Recurso de Certiorari"; (ii) el 5 de abril de 2025, presentó Moción Informando Presentación de Recurso junto con la copia de la portada sellada con su fecha y hora de presentación mediante el Sistema Unificado de Manejo y Administración de Casos (SUMAC); y (iii) "se excusa por la dilación en la presentación de dicha moción. **La dilación obedeció a la preparación de escritos de naturaleza jurisdiccional y otros que ameritaban premura unida a la condición de salud del abogado suscribiente**" [énfasis nuestro].

Consecuentemente, al justipreciar las razones o excusas esbozadas debemos analizar cuidadosamente las explicaciones del incumplimiento y la evidencia que lo sustenta. La representación legal, licenciado Gierbolini Bonilla, enunció que su dilación fue causada por la preparación de escritos de naturaleza jurisdiccional y otros que ameritaban premura, así como que padece de una condición de salud. Colegimos que estas motivaciones son "meras generalidades y excusas superfluas". Más, la condición de salud hubiese podido constituir una justa causa si se hubiera evidenciado debidamente mediante una certificación médica presentada en un sobre sellado.

Hemos resaltado que, cuando se insta un recurso apelativo se deberá notificar, sellada con la fecha y la hora de presentación, a todas las representaciones legales o en su defecto, a todas las partes, y al foro *a quo* dentro del término dispuesto para incoar el recurso.[43]

Apuntamos que, sabido es que el término de notificación de un recurso es de *estricto cumplimiento*. Más, nuestro más Alto Foro ha

---

[43] Reglas 13(B) y 14 (B) de nuestro Reglamento, *supra*.

implantado que, el tribunal apelativo intermedio no posee discreción para prorrogar un plazo de forma automática, para ello, es necesario que la representación legal o parte haya demostrado y acreditado justa causa. Por lo cual, es imperativo recalcar que la acreditación de la justa causa debe realizarse con una exposición certera.

Ergo, el señor **ROSA MIRANDA** tenía que haber notificado el recurso de *Certiorari* a **FCMC** y al tribunal recurrido dentro del tiempo reglamentario, de no hacerlo, debió mediar una justa causa debidamente evidenciada. En este petitorio, no existió notificación oportuna al foro primario ni una justa causa para su tardanza. En consecuencia, no tenemos discreción para prorrogar el período de *estricto cumplimiento* y procede la ***desestimación*** del recurso por falta de *jurisdicción*.

### - IV -

Por los fundamentos antes expuestos y en conformidad con la Regla 83 (C) del Reglamento del Tribunal de Apelaciones, ***desestimamos,*** por falta de *jurisdicción,* el *Certiorari* promovido el 31 de marzo de 2025 por el señor **JORGE JOSÉ ROSA MIRANDA;** y ordenamos el cierre y archivo del presente caso.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
