Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| JULIA FELIZ BARRERA<br><br>Recurrente<br><br>v.<br><br>POWER SOLAR, LLC.,<br>SUNNOVA ENERGY<br>CORPORATION<br><br>Recurridos | TA2025RA00307 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querella número: ARE-2024-0006620<br><br>Sobre: Incumplimiento de Contrato y Garantía |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece ante este Foro, la recurrente, Julia Feliz Barrera, por derecho propio y en *forma pauperis*, y nos solicita que revoquemos una *Resolución en Reconsideración* […] emitida por el Departamento de Asuntos del Consumidor (DACO), el 25 de septiembre de 2025, notificada el 30 de septiembre del mismo año. Mediante el referido dictamen, la agencia recurrida desestimó la querella presentada por la recurrente, en contra de la empresa Power Solar, LLC (Power Solar).

Por los fundamentos que se exponen a continuación, se revoca la *Resolución* recurrida y se le devuelve el caso al DACO para la continuación de los procedimientos administrativos en contra de Power Solar, de forma cónsona con lo dispuesto en esta *Sentencia*.

**I**

El 15 de octubre de 2024, la recurrente Julia Feliz Barrera presentó una *Querella* ante el Departamento de Asuntos del Consumidor (DACO) sobre incumplimiento de contrato y de

garantía, en contra de las empresas Power Solar, LLC. (Power Solar), y Sunnova Energy Corporation (Sunnova).[1] Luego de varias incidencias procesales, el 24 de octubre de 2024, Sunnova solicitó la desestimación de la querella. Como fundamento, adujo que el DACO carece de jurisdicción sobre la materia para adjudicar la querella, debido a que el contrato suscrito con la recurrente contiene una cláusula de arbitraje compulsorio.[2]

Tras evaluar la solicitud de desestimación instada por Sunnova el 24 de octubre de 2024, el DACO emitió la *Resolución* recurrida el 12 de junio de 2025, la cual fue notificada al día siguiente. Mediante esta, desestimó la querella de epígrafe, en cuanto a Sunnova, pero en ese momento no realizó pronunciamiento alguno respecto a Power Solar. En síntesis, la agencia reseñó que el contrato suscrito entre Feliz Barrera y Sunnova contiene una cláusula en la que las partes acordaron resolver sus disputas mediante arbitraje. En virtud de lo anterior, el DACO concluyó que carece de jurisdicción para adjudicar la querella, por lo que ordenó su archivo.

Es importante destacar también que, el 11 de junio de 2025, Sunnova le notificó al DACO que, el 8 de junio de 2025, su compañía matriz interpuso un proceso legal ante la Corte de Quiebras de los Estados Unidos para el Distrito de Texas, bajo el Capítulo 11 del Código Federal de Quiebras, sobre reorganización. En consecuencia, solicitó la paralización de los procedimientos en su contra.

En desacuerdo, el 27 de junio de 2025, la recurrente solicitó reconsideración oportuna. En cuanto a Sunnova, Feliz Barrera se allanó al cierre de la querella en su contra, tras reconocer que la

---

[1] Surge del expediente administrativo que la querella de epígrafe fue procesada por el DACO mediante su sistema electrónico de radicaciones, el 16 de octubre de 2024.

[2] Según surge del expediente administrativo, Feliz Barrera y Sunnova suscribieron un "Acuerdo de Arrendamiento y Sistema de Almacenamiento de Energía" para el arrendamiento de un sistema de paneles solares y de un sistema de almacenamiento de energía.

empresa se encuentra en proceso de quiebra y que, en efecto, el contrato suscrito contiene una cláusula de arbitraje. Sin embargo, solicitó la continuación del caso en contra de Power Solar. En específico, adujo que Power Solar incumplió con realizar el análisis de consumo energético requerido antes de la instalación de los paneles solares. Asimismo, que incumplió con proveerle una segunda batería, así como los paneles solares adicionales que resultaban necesarios para suplir su consumo energético.

Por su parte, tras una evaluación preliminar de la solicitud de reconsideración instada por la recurrente, el DACO emitió una *Resolución Interlocutoria y Orden* el 11 de julio de 2025, la cual fue notificada el 14 de julio del mismo año. Mediante esta, acogió la solicitud de reconsideración. En específico, emitió la orden siguiente:

> Para poder evaluar detenidamente las alegaciones expuestas en la Solicitud de Reconsideración de conformidad a la Ley 38 del 2017 de Procedimiento Administrativo Uniforme del Gobierno de PR (en adelante LPAU), **se toma conocimiento y se acoge** la solicitud de Reconsideración presentada el 27 de junio de 2025 por la parte querellante Julia Feliz, para ser analizada y adjudicada. Los términos de revisión judicial quedan paralizados conforme lo dispone la LPAU. (Énfasis en el texto original).

Así, luego de evaluar en los méritos la solicitud de reconsideración instada por la recurrente, así como la moción presentada por Sunnova para notificar que se acogía a los beneficios del Código Federal de Quiebras, el 25 de septiembre de 2025, el DACO emitió una *Resolución en Reconsideración y Paralización por Quiebra – Desestimación por Falta de Jurisdicción*, que fue notificada el 30 de septiembre de 2025. En virtud del referido dictamen, la agencia recurrida ordenó la paralización inmediata de todos los procedimientos instados en contra de Sunnova. En cuanto a Power Solar, el DACO concluyó que también carece de jurisdicción para adjudicar la querella. Esto, debido a que, de conformidad con el

Artículo 6.4 de la Ley Núm. 57-2014,[3] el Negociado de Energía de Puerto Rico (Negociado) es el ente con jurisdicción primaria exclusiva para atender controversias y asuntos relacionados con la producción de energía entre un productor independiente de energía, la autoridad y sus clientes.

Aún inconforme, el 17 de octubre de 2025, Feliz Barrera instó el recurso de revisión judicial ante nos, por derecho propio y en *forma pauperis,* en el que señaló los siguientes errores:

> DACO erró al declararse sin jurisdicción sobre un asunto claramente vinculado a un contrato de compraventa, instalación y servicio, materia que la ley y los reglamentos de DACO expresamente colocan bajo su competencia.

> DACO incurrió en error de derecho al desestimar la querella y cerrar el caso en lugar de coordinar con el Negociado de Energía un mecanismo de cooperación interagencial, conforme dispone el Artículo 7 de la Ley Núm. 38-2017, cuando existen dudas sobre la jurisdicción.

> DACO actuó de forma arbitraria y contraria a derecho al privar a la peticionaria de un foro administrativo competente, máxime cuando la propia resolución reconoce incumplimiento contractual y la existencia de perjuicio al consumidor.

> La actuación de DACO constituye una violación al derecho constitucional de acceso a la justicia administrativa y al debido proceso de ley.

Evaluado lo anterior, le ordenamos al DACO elevar copia certificada del expediente administrativo. Así, en cumplimiento con la referida orden, el 3 de noviembre de 2025, el DACO presentó una *Moción en Cumplimiento de Orden,* con la cual incluyó una copia certificada del expediente administrativo.

Así también, le ordenamos a la parte recurrida presentar su alegato en oposición, de conformidad con lo dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63. Transcurrido dicho término, el cual venció el 17 de noviembre de 2025, Power Solar no presentó escrito en oposición.

---

[3] Conocida como *Ley de Transformación y ALIVIO Energético.*

Sin embargo, el 29 de noviembre de 2025, Power Solar presentó un escrito que tituló *Moción para informar falta de notificación adecuada y solicitar término adicional para presentar alegato en oposición.* En síntesis, expuso que nunca fue notificada formalmente de la presentación de este recurso. En específico, adujo que Feliz Barrera cursó dos notificaciones a direcciones incorrectas, que fueron devueltas por el correo postal, por lo que nos solicitó un término adicional de diez (10) días para presentar un alegato en oposición.

Tras considerar la solicitud de Power Solar, el 1 de diciembre de 2025, emitimos y notificamos una *Resolución,* en la que le concedimos hasta el 12 de diciembre de 2025 para presentarnos su postura. Así, en cumplimiento con dicha *Resolución,* el 9 de diciembre de 2025, Power Solar compareció sin someterse a nuestra jurisdicción mediante una *Solicitud de Desestimación por Falta de Jurisdicción.*

Esencialmente, mediante la referida comparecencia, Power Solar adujo que este Foro carece de jurisdicción para atender el recurso de epígrafe. Ello, debido a que, en los acuerdos suscritos, las partes escogieron el arbitraje como foro primario y exclusivo para atender todas las controversias que surgieran. En específico, planteó que la cláusula de arbitraje pactada entre Feliz Barrera y Sunnova, en virtud del *Acuerdo de Arrendamiento y Sistema de Almacenamiento de Energía* (Acuerdo de Arrendamiento) suscrito el 13 de agosto de 2024, le es extensiva a Power Solar en su capacidad como "contratista seleccionado, para la venta al pormenor a plazos e instalación de un sistema solar fotovoltaico, un sistema de almacenamiento y todo el equipo relacionado".

Tras evaluar la comparecencia escrita de Power Solar, el 9 de diciembre de 2025 emitimos una *Resolución* en la que le concedimos hasta el jueves, 11 de diciembre de 2025, a las 2:00 p.m., para

proveernos copia del Acuerdo de Arrendamiento, ya que no fue incluido como anejo a la *Solicitud de Desestimación por Falta de Jurisdicción* presentada. Así, en cumplimiento de la referida orden, Power Solar presentó una copia **incompleta** del documento, de la cual no surge el inciso 20 de los Términos y Condiciones de la Venta, al cual hace referencia como fundamento para su solicitud de desestimación.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso de epígrafe.

**II**

**A**

La jurisdicción es el poder o autoridad que posee un tribunal para considerar y decidir un caso o controversia. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA*, 211 DPR 521, 529 (2023); *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Cobra Acquisitions, LLC. v. Municipio de Yabucoa* 210 DPR 384, 394 (2022). Nuestro Tribunal Supremo ha reiterado que los tribunales debemos ser fieles guardianes de nuestra jurisdicción y en que no tenemos discreción para asumir jurisdicción allí donde no la hay. Es decir, la jurisdicción incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Management Group, Inc. v. Oriental Bank,* 204 DPR 374, 386 (2020); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007). En consecuencia, les corresponde a los foros adjudicativos examinar su propia jurisdicción. *S.L.G. Szendrey-Ramos v. F. Castillo.,* supra, pág. 883.

La falta de jurisdicción tiene las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia

jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. S.L.G. Solá-Moreno v. Bengoa Becerra,* 182 DPR 675, 682 (2011)*.* Por tanto, cuando este Foro carece de jurisdicción, "procede la inmediata desestimación del recurso apelativo [...]". *S.L.G. Szendrey-Ramos v. F. Castillo,* supra, pág. 883.

**B**

Mediante la *Ley de Transformación y ALIVIO Energético,* Ley Núm. 57-2014, 22 LPRA sec. 1051, *et seq.,* la Asamblea Legislativa creó el Negociado de Energía de Puerto Rico (Negociado) como un ente independiente especializado encargado de reglamentar, supervisar y hacer cumplir la política pública energética del Gobierno de Puerto Rico. Artículo 1.3 (j), 22 LPRA sec. 1051a (j); véase, además, Capítulo VI de la Ley Núm. 57-2014, *Creación, estructura, operación, presupuesto y poderes generales del Negociado de Energía.*

En cuanto al rol del Negociado como ente adjudicativo, el referido estatuto dispone las instancias en que tendrá jurisdicción primaria exclusiva, así como las circunstancias en que tendrá jurisdicción general. Véase, Artículo 6.4(a)(b) de la Ley Núm. 57-2014, 22 LPRA sec. 1054c. Asimismo, con el fin de dar cumplimiento a la política pública encomendada, el Negociado promulgó el Reglamento 8543 de 18 de diciembre de 2014, *Reglamento de procedimientos adjudicativos, avisos de incumplimiento, revisión de tarifas e investigaciones.* Este cuerpo normativo establece las normas que rigen los procedimientos adjudicativos ante el Negociado, a la luz de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*

En lo pertinente a la jurisdicción del Negociado, es preciso destacar el inciso (6) del Artículo 6.4(a) de la Ley Núm. 57-2014, 22 LPRA sec. 1054c, el cual dispone que el Negociado tiene jurisdicción primaria exclusiva en los supuestos siguientes:

Los casos y controversias que surjan en relación con contratos entre la Autoridad, su sucesora, o el Contratante de la red de transmisión y distribución, los productores independientes de energía y las compañías de energía, así como sobre los casos y controversias entre productores independientes de energía. Esto incluirá, pero no se limitará, a los contratos de compraventa de energía mediante los cuales un productor independiente de energía se disponga a proveer energía a una compañía de energía para ser distribuida, y a los casos en que se cuestione la razonabilidad de las tarifas de interconexión, o la razonabilidad de los términos y condiciones de un contrato de compra de energía.

**C**

El DACO es una agencia administrativa creada de conformidad con la Ley Núm. 5 del 23 de abril de 1973, según enmendada, 3 LPRA sec. 341 *et seq.*, conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor*. Su propósito principal es implementar y hacer valer los derechos de los consumidores en nuestra jurisdicción. Véase, *Ayala Hernández v. Consejo de Titulares*, 190 DPR 547, 563 (2014).

Esta ley prohíbe todo acto, práctica, anuncio o publicidad que constituya o tienda a constituir fraude, engaño, o falsa representación respecto a un producto, artículo o servicio. Artículo 19, 3 LPRA sec. 341r. De este modo, en el ejercicio de las facultades que le fueron conferidas, el DACO aprobó el *Reglamento de Prácticas Comerciales*, Reglamento Núm. 9158 del 6 de febrero de 2020, cuyo propósito es "regular ciertas prácticas comerciales en Puerto Rico, con el fin de brindar seguridad y confianza a los consumidores. […]". Regla 2, Reglamento Núm. 9158.

Asimismo, el propio Reglamento dispone que su interpretación siempre debe ser liberal "a favor del consumidor".

Regla 3 del Reglamento Núm. 9158. Cabe destacar también que las disposiciones del reglamento aplicarán a "toda persona natural o jurídica que se dedique [...] a ofrecer bienes o servicios a consumidores en la jurisdicción del Gobierno de Puerto Rico". Regla 4, Reglamento Núm. 9158.

La Regla 5(b) del Reglamento Núm. 9158 define "[a]nuncio engañoso" como sigue:

> [C]ualquier anuncio que constituya o tienda a constituir fraude, engaño o comunique o tienda a comunicar una idea falsa, confusa o incorrecta, sobre el bien o servicio anunciado. También se considera engañoso cualquier anuncio que omita datos relevantes del producto, bien o servicio, limitando o privando al consumidor de tomar decisiones informadas y conscientes.

Esbozada la norma jurídica aplicable, procedemos a resolver.

### III

Antes de proceder con la discusión de los señalamientos de error esbozados por la recurrente, abordamos la discusión de la *Solicitud de Desestimación por Falta de Jurisdicción* instada por Power Solar. Como fundamento para dicha solicitud, Power Solar adujo que la cláusula de arbitraje pactada entre Feliz Barrera y Sunnova, en virtud del Acuerdo de Arrendamiento, le es extensiva en su capacidad como instalador y contratista seleccionado.

Así, ante el hecho de que Power Solar no incluyó como anejo copia del Acuerdo de Arrendamiento, le dimos oportunidad de suplementar la moción mediante la presentación del referido documento. A pesar de lo anterior, llama a nuestra atención que, en su comparecencia posterior, si bien Power Solar presentó una copia digitalizada del Acuerdo de Arrendamiento, esta se encuentra incompleta, pues no refleja el inciso 20 de los Términos y Condiciones de la Venta que contiene la cláusula de arbitraje a la cual hace referencia como fundamento. De este modo, nos resulta forzoso concluir que Power Solar no nos colocó en posición de

adjudicar adecuadamente la solicitud de desestimación instada, por la cual procede que la declaremos No Ha Lugar.[4]

A continuación, procede la discusión en los méritos de los señalamientos de error formulados por la recurrente, los cuales son susceptibles de discusión conjunta, debido a que están estrechamente relacionados. Mediante estos, Feliz Barrera señala que el DACO incidió al declararse sin jurisdicción para adjudicar la querella de epígrafe contra Power Solar, bajo el supuesto de que los asuntos planteados son de la jurisdicción primaria exclusiva del Negociado. De forma cónsona, Feliz Barrera plantea que el DACO actuó de forma arbitraria y contraria a derecho al privarle de un foro administrativo competente; máxime, cuando en el propio dictamen recurrido, la agencia reconoce que hubo incumplimiento contractual, así como la existencia de perjuicio al consumidor. Esto, en violación a su derecho constitucional de acceso a la justicia administrativa y al debido proceso de ley. Tiene razón la recurrente.

Según surge del expediente administrativo, la base legal al amparo de la cual Feliz Barrera instó la querella de epígrafe lo fue el *Reglamento contra Prácticas y Anuncios Engañosos*.[5] Como remedio, solicita que el DACO le ordene a Power Solar volverle a montar la batería del sistema de placas solares que le fue instalado, a tres pies de distancia del suelo, debido a que su residencia ubica en una zona inundable. Asimismo, reclama que se le ordene a Power Solar suplirle una batería adicional, debido a que su consumo energético

---

[4] Si bien, como mencionáramos, la copia del Acuerdo de Arrendamiento presentada por Power Solar, está <u>incompleta</u>, llama a nuestra atención que en la sección de Introducción del Acuerdo de Arrendamiento se dispone lo siguiente: "Este acuerdo de arrendamiento [...] es el acuerdo **entre usted como arrendatario y Sunnova Energy Corporation como arrendador** [...], que cubre el arrendamiento del sistema fotovoltaico de paneles solares y todo el equipo relacionado al mismo y el sistema de almacenamiento de energía o batería [...]". (Negrillas supplidas).

[5] Al momento de presentación de la querella de epígrafe el 15 de octubre de 2024, el *Reglamento contra Prácticas y Anuncios Engañosos*, Reglamento Núm. 8599 de 29 de mayo de 2015, ya estaba derogado, por lo que es pertinente aludir al cuerpo reglamentario vigente que le sustituye, entiéndase, el *Reglamento de Prácticas Comerciales*, Reglamento Núm. 9158 del 6 de febrero de 2020.

supera la capacidad de generación de energía que produce el sistema que le fue instalado, por lo que sufre apagones de energía en las noches y se ve obligada a consumir la energía que producen las compañías Luma Energy y Genera PR.

Como base para sustentar dicho reclamo, en la relación de hechos que se narra en el cuerpo de la querella, Feliz Barrera argumentó que los apagones nocturnos responden a que, tanto la cantidad de placas solares como la batería que Power Solar le instaló, no bastan para suplir el consumo energético actual de su hogar. Asimismo, adujo que "[l]a independencia energética es producir mi propia energía con las placas solares diariamente. Pero Power Solar y su sistema fuerza una dependencia por las noches al tener que utilizar a Luma/Genera y, si tienen avería, me quedo sin luz. **No he añadido nada adicional desde firmar el contrato que cambie el uso energético**". (Énfasis nuestro).

En virtud del dictamen recurrido, el DACO desestimó la querella incoada en contra de Power Solar, tras concluir que carecen de jurisdicción para atender el reclamo, debido a que el Negociado es el ente administrativo con la jurisdicción primaria exclusiva, de conformidad con el Artículo 6.4(a)(6) de la Ley Núm. 57-2014, *supra*. En la resolución objeto de revisión, el DACO manifestó que uno de sus investigadores rindió un informe luego de realizar una inspección en la residencia de la recurrente, la cual reveló que el sistema fotovoltaico que Power Solar le instaló estaba debidamente encendido y en funcionamiento.

Como consecuencia de lo anterior, concluyó que en los planteamientos de la recurrente "están de por medio asuntos relacionados con la producción de energía, los métodos de facturación y/o las tarifas impuestas a los consumidores", por lo que "el DACO está impedido de actuar directamente", ante la expresión legislativa de que tales asuntos son de la jurisdicción

primaria exclusiva del Negociado. En apoyo de esta interpretación, el DACO aludió a la Interpretación 2022-003,[6] que es un documento interno en el cual la agencia recurrida analizó los límites de su jurisdicción, en contraposición a los supuestos de jurisdicción primaria exclusiva del Negociado.

A pesar de lo anterior, llama a nuestra atención que, precisamente mediante la Interpretación 2022-003, el propio DACO concluyó lo siguiente:

> Al amparo de las facultades delegadas por la Ley Núm. 5, y en virtud de lo que dispone el derecho aplicable, el foro adjudicativo del DACO podrá asumir jurisdicción sobre todo caso relacionado a la compraventa, instalación y mantenimiento de servicios de placas solares, siempre que no estén **de por medio asuntos en torno a la producción de energía, los métodos de facturación, las tarifas o los problemas de interconexión**. En todo otro asunto, el Departamento podrá asumir jurisdicción. (Negrillas en el texto original).

En fin, luego de evaluar el dictamen recurrido, a la luz de la querella de epígrafe y la totalidad del expediente administrativo, nos resulta forzoso concluir que es errado el razonamiento en el cual el DACO se basa para desestimar la querella en contra de Power Solar. Si bien no hay controversia respecto a que las controversias que giran en torno a la producción de energía, los métodos de facturación, las tarifas o los problemas de interconexión, ciertamente son de la jurisdicción primaria exclusiva del Negociado, ninguno de estos supuestos está planteado en la querella de epígrafe.

Tal y como reseñáramos, Feliz Barrera lo que plantea en la querella instada es que Power Solar omitió instalarle un sistema de placas solares que supla adecuadamente sus necesidades de consumo energético, en contravención al acuerdo suscrito. Ello, sin

---

[6] Este documento se titula *Para aclarar aspectos jurisdiccionales del foro adjudicativo del DACO respecto a los comercios que ofrecen servicios de venta, instalación y/o mantenimiento de sistemas de placas solares.*

lugar a duda, se encuentra comprendido bajo la jurisdicción del DACO. En consecuencia, corresponde revocar el dictamen recurrido y devolver el caso a la consideración del DACO, para la adjudicación en los méritos de la querella de epígrafe.

**IV**

Por los fundamentos que anteceden, se revoca la *Resolución en Reconsideración* [...] emitida por el Departamento de Asuntos del Consumidor (DACO), el 25 de septiembre de 2025, notificada el 30 de septiembre del mismo año. En consecuencia, se le devuelve el caso al DACO para la continuación de los procedimientos administrativos en contra de la empresa Power Solar, LLC., de forma cónsona con lo dispuesto en esta *Sentencia.* Asimismo, se declara No Ha Lugar la *Solicitud de Desestimación por Falta de Jurisdicción* instada por Power Solar, LLC.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones